

1998 Decisions

4-29-1998

# United States v. Faulks

Precedential or Non-Precedential:

Docket 96-2056

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"United States v. Faulks" (1998). *1998 Decisions.* Paper 96.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/96

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 29, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-2056

UNITED STATES OF AMERICA

v.

JUAN FAULKS
        Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Action No. 96-cr-00299-1)

Argued October 17, 1997

BEFORE: STAPLETON, ALITO and SEITZ, Circuit Judges

(Opinion Filed April 29, 1998)

        Michael R. Stiles
        United States Attorney
        Walter S. Batty, Jr.
        Assistant U.S. Attorney
        Wendy A. Kelly (Argued)
        Assistant U.S. Attorney
        Office of United States Attorney
        615 Chestnut Street, Suite 1250
        Philadelphia, PA 19106
         Attorneys for Appellee

          Peter Goldberger (Argued)
          Pamela A. Wilk
          James H. Feldman, Jr.
          50 Rittenhouse Place
          Ardmore, PA 19003-2276
           Attorneys for Appellant

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Defendant Juan Faulks entered into a plea agreement
with the government which required him to cooperate in the
investigation of individuals participating in the distribution
of narcotics. In return for Faulks' assistance, the
government agreed to file a motion pursuant to U.S.S.G.
S 5K1.1 requesting a downward departure from the
Sentencing Guidelines. Faulks asserts that the district
court misapplied the Sentencing Guidelines because it
granted the government's motion but, nevertheless,
imposed a sentence within the applicable guideline range.
Faulks also contends that the district court erred in
declining to depart pursuant to U.S.S.G. S 5K2.0 based on
his agreement not to oppose certain administrative
forfeitures. Finally, Faulks submits that the district court
erred in finding that the controlled substance he
distributed was crack cocaine.

We will remand for further sentencing proceedings.

I.

On two occasions in 1996, Faulks sold approximately
eleven and one half ounces of cocaine base to a confidential
informant. He was later arrested and charged with two
counts of distributing a "substance containing cocaine base
(crack)" in violation of 21 U.S.C. S 841(a)(1), two counts of
money laundering in violation of 18 U.S.C. S 1956, one
count of criminal forfeiture of real property pursuant to 18
U.S.C. S 982, and four counts of criminal forfeiture of
personal property pursuant to 21 U.S.C. S 853. App. at 8-9.

Faulks entered into a plea agreement which required him to plead guilty to the counts of cocaine distribution, money laundering and criminal forfeiture of real property. The government agreed to dismiss the remaining counts of criminal forfeiture in return for Faulks' acquiescence in the administrative forfeiture of the personal property described in the indictment. It also committed itself to:

> [m]ake a motion to allow the Court to depart from the Sentencing Guidelines pursuant to Sentencing Guidelines S 5K1.1, and to impose a sentence below any mandatory minimum term of imprisonment pursuant to 18 U.S.C. S 3553(e), if the government, in its sole discretion, determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.

App. at 36-37.

When Faulks entered his guilty pleas, the court asked him at the outset to identify the charges to which he wished to plead guilty. He responded, "Two counts of distribution of crack cocaine, and forfeiture of my home, and to money laundering." App. at 45. Thereafter, the government made a proffer of evidence during which the prosecutor consistently and on six occasions referred to the substance distributed by Faulks as "crack cocaine." She reported during the proffer that the substance purchased by the informant on both occasions was tested by the DEA lab and determined to be "crack cocaine base." App. at 49-50. After the proffer, with one exception not here relevant, both Faulks and his counsel expressly confirmed that the government's version of the facts was substantially correct.

The Presentence Investigation Report ("PSI") calculated the guideline range to be 87 to 108 months. This calculation assumed that the substance distributed was crack cocaine and that Faulks was entitled to escape the ten-year mandatory minimum provisions of 21 U.S.C. S 841(b)(1)(A) under the safety valve provisions of U.S.S.G. S 5C1.2. Neither side objected to the calculation of the guideline range in the PSI.

3

Prior to the sentencing hearing, the government filed a "Motion for Downward Sentencing Departure Pursuant to Section 5K1.1." App. at 54. This motion characterizes the government's obligation under the plea agreement as one "to permit the Court to depart downward from the applicable Sentencing Guidelines range." Id. The motion represented to the court that Faulks had provided the government with substantial assistance in the prosecution of other persons.

At the sentencing hearing, Faulks' counsel argued for a downward departure based on his agreement not to contest the administrative forfeitures. He insisted that this was meaningful because "[s]ome of these items, for example, diamond rings and such, were purchased before this indictment occurred or before his drug activity occurred." App. at 58-59. Although the prosecutor acknowledged that Faulks had "consented to the forfeiture of these items administratively," she, inexplicably, agreed with the court when it advised Faulks that he could still contest the forfeitures if he chose to do so. App. at 59. The court did not explain the basis for this advice. It denied the requested downward departure on the ground that Faulks could still contest the forfeitures and therefore had given up nothing.

Thereafter, the prosecutor called upon the court to grant the S 5K1.1 motion. Almost immediately thereafter she was asked to advise the court what sentence the government was recommending. She replied that the government was "recommending a minimal departure . . . in the upper range of the guideline," because Faulks had opportunities to provide "significant information" but chose not to do so. App. at 66, 71. Faulks' counsel objected and called upon the court "to depart from the 87 months, a downward departure, because then the 5K1.1 is meaningful." App. at 70. The district court sentenced Faulks to 95 months of imprisonment. Shortly thereafter, it entered an order reflecting that it had granted the government'sS 5K1.1 motion to depart. In its "Statement of Reasons" for its judgment, the court checked a box indicating that its "sentence departs from the guideline range upon motion of the government, as a result of defendant's substantial assistance," but then inserted by hand, "However, sentence is within guideline range." Addendum to Appellant's Brief.

4

II.

As Faulks stresses, there is an inconsistency between what the district court said and what it did. The departures provided for in Part K of the Guidelines Manual are departures from "the range established by the applicable guideline." E.g. U.S.S.G. S 5K2.0 Grounds for Departure (policy Statement). Thus, when U.S.S.G. S 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance . . . the court may depart from the guidelines," it is authorizing the court to impose a sentence less than the range of sentences to which the Guidelines would otherwise limit the court's discretion. As the government acknowledged in its S 5K1.1 motion, a motion under that section is, accordingly, intended "to permit the Court to depart downward from the applicable Sentencing Guidelines range." App. at 54. This fact is also reflected in the printed judgment form utilized by the district court which characterizes a departure as a "sentence [that] departs from the guideline range." Addendum to Appellant's Brief.

It follows that when someone is promised the possibility of "a departure from the guidelines" under U.S.S.G. S 5K1.1, he or she may reasonably expect to be afforded the possibility of a sentence below the guideline range. It is thus important that United States Attorneys and district courts not use the term "departure" loosely. We are not confronted, however, with a claim that Faulks was misled by anyone to his detriment. He does not claim, for example, that the government failed to file a motion that he reasonably believed it would file as a result of the plea agreement.1

What we are confronted with is an argument that a sentencing judge who has granted a S 5K1.1 motion is powerless to impose a sentence within the guideline range.

_____

1. While it is true that the prosecutor, afterfiling the S 5K1.1 motion, recommended a sentence in the "upper range of the guideline" the Plea Agreement reserves to the government the right to "make whatever sentencing recommendation [it] deems appropriate." We are not called upon here, however, to determine whether the government's conduct was consistent with the Plea Agreement and we do not.

We conclude that this claim should be rejected where, as here, the record provides assurance that the sentencing judge recognized his authority to depart below the guideline range and there is no ambiguity about the intended sentence.

The initial issue in our analysis is whether a district court, in the absence of a S 5K1.1 motion, may consider the defendant's assistance to the government in deciding where to sentence within the guideline range. We believe the answer must be "yes." Congress directed the Commission to "assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed . . . to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 28 U.S.C. S 994(n). While this directive has been partially implemented by the S 5K1.1 departure authority, we are confident that neither Congress nor the Commission considered what was "generally appropriate" to be inappropriate when a sentencing judge is exercising discretion within the guideline range. To the contrary, we find consideration of substantial assistance for this purpose entirely consistent with the authority bestowed on sentencing judges. As the Second Circuit Court of Appeals observed in United States v. Huerta, 878 F.2d 89, 93 (2d Cir. 1989):

> [The authorizing statute and the Guidelines do] not foreclose a sentencing court from considering a defendant's cooperation as a mitigating factor in deciding what sentence within the applicable range designated by the Guidelines is appropriate, whether or not the government agrees. . . . Under the Guidelines, courts may weigh a wide array of factors, 18 U.S.C. S 3661, including "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. S 3553(a)(1), to arrive at a sentence that "reflect[s] the seriousness of the offense, [ ] promote[s] respect for the law, and [ ] provide[s] just punishment for the offense[.]" 18 U.S.C.S 3553(a)(2)(A). We perceive no reason why a defendant's cooperation is not a relevant factor in applying those standards.

6

Having resolved this threshold issue, we proceed to inquire whether the authority to consider substantial assistance in sentencing within the guidelines is affected in any way by the filing of a S 5K1.1 motion. The answer, of course, must be "no." Under the Guidelines, the sentencing court is free to deny the motion and sentence as it would have done in its absence. If the court believes it has given sufficient credit for the substantial assistance by moving down in the range, nothing we perceive in the Guidelines precludes it from avoiding undeserved credit by denying the government's motion. Thus, the district court in this case could have, quite properly, denied the motion for a departure and then gone on to acknowledge Faulks' substantial assistance by sentencing lower in the guideline range than it would otherwise have done. In the interest of avoiding possible misunderstanding in the future, we suggest that this is the preferable way to achieve the result that the district court clearly sought here. This conclusion does not, however, provide an answer to the argument that Faulks here advances based on the fact that the district court granted, rather than denied, the motion to depart.

The final step is to determine whether a sentencing court may grant a S 5K1.1 motion for a downward departure and nevertheless impose a sentence within the otherwise applicable guideline range. We conclude that the district court's statement that it was granting a departure should be regarded as harmless error, and we hold that it, accordingly, does not mandate a sentence below the guideline range. The record makes clear both that the district court was aware of its discretion to depart below the guideline range based on Faulks' substantial assistance and that, in its discretion, that assistance did not warrant a sentence below that range. Since, as we have demonstrated, the district court was authorized to impose the sentence that it in fact imposed, its judgment should not be disturbed. Cf. United States v. Baird, 109 F.3d 856 (3d Cir.), cert. denied, 118 S. Ct. 243 (1997).

Situations may undoubtedly arise in which an inconsistency between granting a S 5K1.1 motion and a sentence within the guideline range will raise questions about whether the defendant was misled, whether the judge

7

understood that he had authority to depart, what sentence the judge actually intended, or whether the judge was otherwise confused. But this is not such a case. Faulks was told that he would receive a sentence for his cooperation below the guideline range only if the court found that appropriate and the court clearly did not. Contrary to Faulks' suggestion, there is nothing unclear or ambiguous about the court's 95 month sentence or about whether it was the sentence the court intended to impose. The court listened at great length to both sides' view of the value of Faulks' assistance and clearly decided that it would warrant an in-range reduction but not a sentence below the guideline range. Under these circumstances, we will not disturb the resulting sentence on this ground.2

III.

At sentencing, Faulks asked for a departure pursuant to U.S.S.G. S 5K2.0 based on his agreement not to contest certain administrative forfeitures. The Policy Statement of S 5K2.0 provides that:

>       Under 18 U.S.C. S 3553(b), the sentencing court may
>       impose a sentence outside the range established by the

_____

2. While the terminology chosen in S 5K1.1 suggests that a sentencing court is to calculate the applicable guideline range and then decide whether and how far to go below it, we note that at least two courts have adopted a different methodology. In United States v. King, 53 F.3d 589 (3d Cir. 1995), and United States v. Hill, 70 F.3d 321 (4th Cir. 1995), the district courts determined the total offense level, reduced the total offense level by a number of levels determined to be appropriate in light of the substantial assistance, and then calculated a guideline range using the reduced offense level. We had no occasion to pass judgment on this aspect of the district court's sentencing in King. We did suggest in United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990), however, that it is helpful in determining the extent of upward departures for sentencing courts to think in terms of the ranges that would be produced by using analogous offense level enhancements. Nevertheless, we do not read Kikumura to imply that it is improper in applying S 5K1.1 for a district court to calculate the otherwise applicable guideline range and then make an appropriate reduction in the number of months to be served based on its appraisal of the value of the defendant's substantial assistance.

8

applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

We have held that exposure to forfeiture is not a ground for departure under S 5K2.0 because "the Commission considered forfeiture when creating the guideline range for terms of imprisonment." United States v. Shirk, 981 F.2d 1382, 1397 (3d Cir. 1992). Faulks does not argue, however, that his exposure to forfeiture should entitle him to a downward departure. His contention, rather, is that his voluntary surrender of meritorious defenses to forfeiture should entitle him to a departure. In his view, as we understand it, this voluntary surrender evidences extraordinary contrition and acceptance of responsibility.

While Faulks acknowledges that he has received a three level decrease for acceptance of responsibility under U.S.S.G. S 3E1.1, he points out that in United States v. Lieberman, 971 F2.d 989 (3d Cir. 1992), we approved a downward departure for extraordinary acceptance of responsibility even though a two level decrease had been granted under U.S.S.G. S 3E1.1. Faulks stresses that the downward departure in that case was justified in part by the fact that the defendant had agreed to pay more restitution than he believed he owed.

Two other courts of appeals have held that the circumstances surrounding a payment of restitution may demonstrate an extraordinary degree of acceptance of responsibility, thus justifying a departure. In both instances, however, the court indicated that the mere payment of restitution or mandated forfeitures cannot, in and of itself, be the basis for departing from the Guidelines. See United States v. Hendrickson, 22 F.3d 170 (7th Cir. 1994); United States v. Crook, 9 F.3d 1422, 1426 (9th Cir. 1993). We agree. As the Hendrickson court put it, "[p]rompt payment of [a] forfeited amount does not transform forfeiture into a ground for departure from the guidelines." Hendrickson, 22 F.3d at 176 n.6.

We do not read either Hendrickson or Crook to hold, however, that a voluntary surrender of meritorious defenses to forfeiture can never evidence an extraordinary acceptance of responsibility, and we decline to so hold. Where it can be established that meritorious defenses have indeed been foregone under circumstances that reflect an extraordinary sense of contrition and desire to make amends for the offense, we see no basis for distinguishing our holding in Lieberman regarding the voluntary payment of restitution not thought to be owed.

In this case, Faulks' counsel was not given an opportunity to build a record in support of his application for a departure for extraordinary acceptance of responsibility because of the court's unexplained conclusion that the plea agreement did not foreclose Faulks from contesting the civil forfeiture. It may well be that the prosecutor's affirmance of the court's conclusion now estops the government from relying on Faulks' waiver of his alleged defenses. But that seems to us irrelevant to the issue of whether Faulks' willingness to enter the agreement in the first place evidences an extraordinary acceptance of responsibility on his part.

We conclude that Faulks should be given a fair opportunity to support his application for a downward departure for extraordinary acceptance of responsibility. By so concluding, we express no view about whether he will be able to make the required showing. On the surface, at least, this does not appear to be an extraordinary situation. But that is a judgment for the district court to make based on the best record that Faulks can provide.

Nor does our conclusion here condemn sentencing judges to try forfeiture actions in the course of their sentencing hearings. Given that the defendant must demonstrate a truly extraordinary situation in order to be entitled to a downward departure for extraordinary acceptance of responsibility, we would expect there to be very few cases in which an application for a departure on this ground cannot be disposed of on the basis of a proffer by the defendant.

IV.

The indictment charged Faulks with distributing crack. It is clear from the transcript of the plea-taking proceedings

that he understood this and that his plea was voluntary. A knowing and voluntary plea constitutes an admission of all material facts alleged in the indictment, even where those facts are not essential elements of the offense charged. See United States v. Dickler, 64 F.3d 818, 823 n.7 (3d Cir. 1995); United States v. Parker, 874 F.2d 174 (3d Cir. 1989). There was a further admission that the substance distributed was crack when Faulks agreed with the government's account of the factual basis for the plea. These admissions provide ample evidentiary support for the district court's finding on the subject. See United States v. Powell, 113 F.3d 464, 470 (3d Cir. 1997).

V.

The judgment of the district court will be reversed, and this case will be remanded for further proceedings on Faulks' application for a downward departure under U.S.S.G. S 5K2.0.3

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

3. Our review of the record reveals no basis for requiring that subsequent proceedings in this case be conducted by a different district judge. Faulks' request that we do so is, accordingly, denied.

11