**UNITED STATES of America,
Plaintiff,**

v.

**Tiffany STEWART, Defendant.**

**No. 1:00–CR–105–ALL.**

United States District Court,
E.D. Tennessee,
at Chattanooga.

June 29, 2001.

Gary S. Humble, U.S. Department of Justice, Office of U.S. Attorney, for Plaintiff.

David R. Barrow, Chattanooga, TN, for Defendant.

### *MEMORANDUM*

COLLIER, District Judge.

This matter came before the Court for a sentencing hearing on May 19, 2001. At the hearing Defendant Tiffany Stewart made an oral motion for downward departure from the applicable sentencing guidelines for "extraordinary acceptance of responsibility." The government offered no objection to the Court's consideration of the motion and agreed with Stewart such a departure was appropriate. After considering the unusual circumstances presented here, the Court concluded this case fell outside the "heartland" and granted Stewart's motion.

The Court has prepared this Memorandum to explain the reasoning behind its decision.

### I. *RELEVANT FACTS*

On January 25, 1999, officers of the Chattanooga, Tennessee, Police Department applied for and obtained a warrant to search the westside residence of Stewart's codefendant Kelvin Ellison.[1] During the

---

1. Even though Kelvin Ellison and Stephen Akridge were indicted separately, because these two cases are closely related, the Court has referred to Ellison and Akridge as Stewart's codefendants throughout.

search, police officers recovered distribution quantities of marijuana and two firearms.[2]

Subsequently, the Chattanooga Police Department developed information that drugs were being sold out of another residence shared by Defendant Stewart, Ellison, and Stephen D. Akridge. After allegedly receiving an anonymous tip,[3] one of the investigating police officers went to the residence on May 2, 2000. Upon arrival, this officer, using deception and threats, obtained invalid consent to search the apartment. The unlawful search led to the discovery and seizure of a substantial quantity of crack cocaine and several firearms. Following the search, on June 19, 2000, all three Defendants gave incriminating statements to the Chattanooga authorities. Stewart was arrested on June 20, 2000 on a federal complaint charging her, along with Akridge and Ellison, with possession of crack cocaine with intent to distribute. Stewart and her two codefendants were ordered detained without bail, and Stewart has been in federal custody ever since. A federal grand jury convened on June 28, 2000 and returned an eight-count indictment against Stewart's codefendants Akridge and Ellison. The indictment charged Akridge and Ellison with conspiracy to possess with intent to distribute crack cocaine and marijuana, aiding and abetting the possession with intent to distribute crack cocaine, aiding and abetting the possession with intent to distribute marijuana, and aiding and abetting the possession of firearms in furtherance of drug trafficking crimes. Akridge was also charged with being a felon in possession of a firearm.

Stewart was charged on August 30, 2000 in a one-count Bill of Information with possession with intent to distribute crack cocaine and aiding and abetting such possession. On September 11, 2000, Akridge moved to suppress the illegally seized evidence and his subsequent statement given on June 19, 2000. Although both codefendants also had standing to object to the May 2, 2000 search, neither Stewart nor Ellison[4] chose to exercise their right to do so. The government obtained a superseding indictment on September 26, 2000, charging Akridge individually with possession with intent to distribute crack cocaine, possession with intent to distribute marijuana, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession. United States Magistrate Judge William B. Mitchell Carter conducted the suppression hearing on October 4, 2000. Stewart testified at the suppression hearing, so she was aware such a motion had been filed.

On November 15, 2000, the government filed the plea agreement it had entered into with Stewart. The agreement had been executed on June 27, 2000. Judge Carter issued a report and recommendation ("R & R") on November 29, 2000, recommending suppression of the evidence seized during the May 2, 2000 search, as well as Akridge's subsequent statements to police on June 19, 2000. The government

---

2: As a consequence of this search, Ellison was later charged with being an Armed Career Criminal in violation of 18 U.S.C. § 924(e)(1).

3. During one of the suppression hearings conducted in the Akridge matter, counsel for Akridge indicated there was some evidence the officer himself may have initiated the anonymous call regarding drug trafficking at this location.

4. On October 3, 2000, Ellison agreed to plead guilty to being an armed career criminal on January 25, 1999 and to possessing crack with intent to distribute on May 2, 2000, and he pleaded guilty to those charges on October 20, 2000. By affidavit, Ellison stated the armed career criminal charge was a "major factor" in his decision to plead guilty.

filed objections to the R & R on December 13, 2000, and the Court adopted Judge Carter's findings of fact and conclusions of law on January 22, 2001, suppressing the evidence. After Judge Carter issued the R & R, but before this Court's final decision on the matter, Stewart pleaded guilty on January 5, 2001. Even after learning of the Court's decision to suppress the evidence, Defendant Stewart abided by her guilty plea and made no effort either to withdraw from her plea or to suppress the illegally obtained evidence.

## II. ANALYSIS

After hearing the arguments of counsel for both sides, the Court determined a substantial downward departure was appropriate in this case. Congress has authorized the district court to depart from the applicable sentencing guideline range when "the Court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guideline . . . ." 18 U.S.C. § 3553(b); *see also United States Sentencing Guidelines* ("U.S.S.G."), Chapter 1, Part A Introduction, 4(b) (Policy Statement) Departures and § 5K2.0, Grounds for Departure (Policy Statement).

█ In deciding to depart from the guidelines, the Court is required to explain both the reasons compelling the decision to depart and the extent of the departure. *United States v. Barajas-Nunez,* 91 F.3d 826 (6th Cir.1993); *United States v. Little,* 61 F.3d 450, 453 (6th Cir.1995) (stating that an appellate court "determine[s] reasonableness [of the extent of the departure] based, in part, on 'the reasons for the imposition of the particular sentence as stated by the district court.'") (quoting *United States v. Thomas,* 24 F.3d 829, 833 (6th Cir.), *cert. denied,* 513 U.S. 976, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994)); *United States v. Fletcher,* 15 F.3d 553, 556 (6th Cir.1994) (stating that reasonableness of a departure is determined by comparing the general sentencing policy with the reasons for departure given by the district court); *United States v. Feinman,* 930 F.2d 495, 502 (6th Cir.1991) (same); *United States v. Lassiter,* 929 F.2d 267, 271 (6th Cir.1991) (stating that a district court's failure to justify the extent of its departure makes meaningful appellate review of the departure impossible).

█ The guidelines instruct courts to "treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes." U.S.S.G., Chapter 1, Part A Introduction, 4(b) (Policy Statement) Departures. When faced with a particular case that is outside the heartland, the court must decide whether the ostensible guideline applies. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.* Some factors are prohibited from consideration, meaning they can never be used as the basis for departure.[5] Other than those specifically prohibited factors, "however, the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds from departure in an unusual case." *Id.; see also United States v. Coleman,* 188 F.3d 354, 362 (6th Cir.1999) (*en banc*) (directing

---

**5.** Factors prohibited from consideration in any departure decision include race, sex, national origin, creed, religion, socioeconomic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship;

*see Koon v. United States,* 518 U.S. 81, 93, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Coleman,* 188 F.3d at 359. *See also* U.S.S.G. §§ 5H1.4, 5H1.10, and 5H1.12.

districts courts to consider the particular facts of a case as a whole in determining whether they are sufficient to take the case out of heartland).

The drafters of the guidelines contemplated that departures would be rare: "[T]he Commission believes that despite the courts' legal freedom to depart from the guidelines, they will not do so very often." U.S.S.G., Chapter 1, Part A Introduction, 4(b) (Policy Statement) Departures. In keeping with that sentiment, other than for substantial assistance to the government, this Court rarely departs downward from the guidelines and has never departed downward on the basis advanced by Defendant in this case.

Two types of departures are recognized by the guidelines. "The first involves instances in which the guidelines provide specific guidance for departure by analogy or by other numerical or non-numerical suggestions." *Id.* The second type of departure is unguided:

A second type of departure will remain unguided. It may rest upon grounds referred to in Chapter Five, Part K (Departures) or on grounds not mentioned in the guidelines. While Chapter Five, Part K lists factors that the Commission believes may constitute grounds for departure, the list is not exhaustive. The Commission recognizes that there may be other grounds for departure that are not mentioned; it also believes there may be cases in which a departure outside suggested levels is warranted. In its view, however, such cases will be highly infrequent.

*Id.*

To make a permissible departure, the Court must first find grounds for a departure actually exist, and then the Court must determine the degree of or range for departure. *See United States v. Joan,* 883 F.2d 491, 494 (6th Cir.1989). "Before the district court may grant a

downward departure, it 'must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline[s'] heartland." ' *United States v. Saucedo,* 226 F.3d 782, 791 (6th Cir.2000) (citations omitted) (emphasis in original). The United States Supreme Court has suggested four factors the court should take into account when considering whether departure is warranted in any given case:

1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case? 2) Has the Commission forbidden departures based on those features? 3) If not, has the Commission encouraged departures based on those features? 4) If not, has the Commission discouraged departures based on those features?

*Koon v. United States,* 518 U.S. 81, 95, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The Sixth Circuit has expressly approved the use of these factors and has held that after *Koon,* U.S.S.G. § 5K2.0 requires courts to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *United States v. Coleman,* 188 F.3d 354, 361 (6th Cir.1999) (en banc) (quoting *Koon* ). Accordingly, in deciding whether, and to what extent, departure was appropriate in the case *sub judice,* the Court considered the circumstances presented in light of the four *Koon* factors.

**A. What specific factor or factors take this case outside the "heartland"?**

The first step in the *Koon* analysis requires the Court to identify the factor or factors that take a given case outside of the heartland. In this case, the Court

found one factor in particular was sufficient to warrant a very substantial downward departure. Defendant Tiffany Stewart demonstrated an acceptance of responsibility beyond what the Court sees in the usual case, even in cases where the defendant is entitled to the full three-level adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Stewart's involvement in the instant offense was discovered as the direct result of an unlawful search. Unlike one of her codefendants, Stewart, who clearly had standing to object to the illegal entry of her residence, declined to pursue her Fourth Amendment remedies and instead chose to enter an unconditional guilty plea. At the time Defendant was rearraigned, the Court had already entered an Order granting her codefendant's motion to suppress all of the evidence seized in the search and subsequent statements obtained as a result. At no time, however, did Stewart seek to withdraw from her plea agreement, nor has she sought to withdraw from her plea, even though she now faces a substantially enhanced sentence from what she originally contemplated when her guidelines were based on cocaine powder rather than cocaine base quantities.[6]

Had Stewart sought suppression of the evidence, it is clear she would have succeeded. In addition, had the evidence been suppressed, the Court believes the government would have faced a very difficult, if not impossible, prosecution. The drugs used both as the basis for the offense of conviction and in calculating Stewart's guidelines are the fruits of the unconstitutional search. Suppression of the evidence would have precluded the use of drugs in a trial, and without the drugs, Stewart's conviction would have been very difficult to obtain. Moreover, suppression of the drugs would have foreclosed their use in calculating the drug amounts used to establish Defendant's sentence. In this case, Stewart's choice not to assert her Fourth Amendment rights has, arguably, made possible what would otherwise have been an impossible task. Thus, the fact Stewart has forgone a meritorious motion to suppress in order to take responsibility for her actions is evidence of extraordinary acceptance of responsibility which takes this case out of the "heartland."

## B. Has the Commission forbidden departures based on this factor?

Having determined Stewart's extraordinary acceptance of responsibility was sufficient to take this case outside the heartland, the Court then turned to the second step in the *Koon* analysis and considered whether the Sentencing Commission has forbidden reliance upon the identified factor as a justification for departure. The guidelines do not expressly forbid departure on the basis of extraordinary acceptance of responsibility. The Court recognizes U.S.S.G. § 3E1.1 already provides for a downward adjustment for those defendants who accept responsibility and plead guilty in a timely manner. U.S.S.G. § 5K2.0, however, explicitly contemplates "the court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range" (*e.g.*, as a specific offense characteristic or other adjustment). U.S.S.G. § 5K2.16 provides voluntary disclosure of an offense that would not have been discovered· otherwise may provide

---

**6.** In general practice, the Tennessee Bureau of Investigation Crime Laboratory does not distinguish between powder cocaine and crack cocaine in its analyses. Consequently, the TBI lab report initially provided to the Probation Department did not indicate whether the substance was crack cocaine. The initial guideline calculations provided to Stewart were based upon the erroneous assumption the substance was powder cocaine. That error was corrected in advance of Stewart's sentencing hearing.

grounds for a departure in the appropriate case. What Stewart has done here is in many respects the functional equivalent of voluntary disclosure, for her involvement in the instant offense was only discovered as the result of an unlawful search. Furthermore, in a recent unpublished decision, the Sixth Circuit indicated extraordinary acceptance was at the very least not a disfavored basis for downward departure. *United States v. Sappington,* 2001 WL 505934 (6th Cir. May 4, 2001).

### C. Has the Commission encouraged departures based on this factor?

Because the Court concluded the Commission has not specifically prohibited departures on the basis of extraordinary acceptance of responsibility, the Court turned to consideration of whether departure on the basis of this factor was encouraged. As noted above, the guidelines provide departure may be appropriate in some cases where a defendant voluntarily discloses the offense of conviction. U.S.S.G. § 5K2.16. So, even though the Commission has not explicitly enumerated extraordinary acceptance of responsibility as a favored basis for departure, it has indicated a departure may be appropriate where a defendant's assistance in the investigation and prosecution of his or her offense rises to a level beyond what one ordinarily sees in a standard case. Additionally, the Sixth Circuit has recognized that, in some circumstances, voluntary payment of restitution may justify an additional departure beyond that contemplated by U.S.S.G. § 3E1.1. *United States v. DeMonte,* 25 F.3d 343, 346 (6th Cir. 1994); *see also United States v. Gee,* 226 F.3d 885, 901–02 (7th Cir.2000) (holding U.S.S.G. § 5K2.0 allows for downward departure for acceptance of responsibility in some cases where U.S.S.G. § 3E1.1 does not even apply); *United States v. Hairston,* 96 F.3d 102, 108 (4th Cir.1996) (holding exceptional efforts at restitution may

constitute extraordinary acceptance of responsibility warranting departure); *United States v. Rogers,* 972 F.2d 489, 493 (2d Cir.1992) (holding "a defendant who exhibits a higher degree of contrition than contemplated by § 3E1.1 'may, in an appropriate case [receive] a downward departure' " (internal citation omitted)).

The Court also found support for its departure decision in a case from the United States Court of Appeals for the Third Circuit, *United States v. Faulks,* 143 F.3d 133 (3d Cir.1998). In that case, the defendant voluntarily surrendered meritorious defenses to forfeiture, and the Third Circuit remanded the case for resentencing so the district court could consider whether a downward departure based on extraordinary acceptance of responsibility was warranted:

> We do not read [our cases] to hold, however, that a voluntary surrender of meritorious defenses to forfeiture can never evidence an extraordinary acceptance of responsibility, and we decline to so hold. Where it can be established that meritorious defenses have indeed been foregone under circumstances that reflect an extraordinary sense of contrition and desire to make amends for the offense, we see no basis for distinguishing our holding in *Lieberman* regarding the voluntary payment of restitution not thought to be owed.

> .    .    .    .    .

> We conclude that Faulks should be given a fair opportunity to support his application for a downward departure for extraordinary acceptance of responsibility. By so concluding, we express no view about whether he will be able to make the required showing. On the surface, at least, this does not appear to be an extraordinary situation. But that is a judgment for the district court to make based on the best record that Faulks can provide.

*Id.* at 138 (modified slightly from original). *Faulks* was cited with approval in *Coleman* as an example of factors to be considered when determining whether departure is appropriate in a given case. *Coleman,* 188 F.3d at 361 n. 8. On the basis of this authority, the Court found that, although the guidelines do not specifically encourage consideration of extraordinary acceptance of responsibility as a factor warranting departure, the factor is, at the very least, an acceptable justification for departure in appropriate circumstances.

### D. Has the Commission discouraged departures based on this factor?

The final step in the *Koon* analysis required the Court to consider whether the Sentencing Commission discourages departure on the basis of extraordinary acceptance of responsibility. The guidelines discourage consideration of a number of factors: education and vocational skills; mental and emotional conditions; physical condition or appearance; employment record; family and community ties and responsibilities; military, civic, charitable or public service; employment-related contributions, and similar good works; and subjection to coercion or duress. *See* U.S.S.G. §§ 5H1.1–1.6, 5H1.11, 5K2.12. Extraordinary acceptance of responsibility is not among the listed factors, allowing a conclusion the guidelines do not explicitly discourage departure on this basis.

### III. *EXTENT OF DEPARTURE*

■ After conducting the foregoing analysis, the Court reached the conclusion

Defendant Stewart's extraordinary acceptance of responsibility was a factor present to an exceptional degree, making this an atypical case. The Court further concluded because the guidelines neither prohibit nor discourage consideration of this factor, it could be used as a basis for departure here. Having determined that a departure was warranted, the Court then faced the task of deciding the appropriate extent of the departure. In unusual cases such as this where a defendant's extraordinary acceptance of responsibility is a primary circumstance making his or her conviction possible, the Court believes a substantial downward departure is appropriate to reward and encourage actions such as those taken by Defendant Stewart. The departure should also be sufficient to encourage the same conduct from others who, like Stewart, are ready to accept responsibility for their actions even though they are armed with a meritorious constitutional defense. While Stewart has admittedly violated the law and deserves punishment for that violation, the Court balances the interest in punishment with the interest in encouraging such responsible after offense conduct as that displayed here.

■ Defendant Stewart's guidelines range was 63 to 78 months. The guideline calculation resulted from a total offense level of 25 and criminal history category of II.[7] The Court believed an eight-level departure down to a total offense level of 17 was appropriate and necessary both to reward Stewart for her actions and to encourage future defendants to emulate her.[8]

---

7. Stewart's guideline range was based upon a determination the offense involved 8.2 grams of crack cocaine, resulting in a base offense level of 26. USSG § 2D1.1(c)(7). Two points were added for possession of a firearm. USSG § 2D1.1(b)(1). This gave an adjusted offense level of 28. Three levels were deducted for acceptance of responsibility. USSG

§ 3E1.1(a) and (b). Because Stewart had two misdemeanor assault convictions, she was assessed two criminal history points which placed her in criminal history category II.

8. Although, according to the penalties found at 21 U.S.C. § 841(b)(1)(B)(iii), a violation of section 841(a)(1) involving more than 5 grams

This departure to a total offense level of 17 and criminal history category of II yielded a guideline range of 27 to 33 months. The Court made this departure without considering any other potential grounds for a downward departure.[9]

## IV. CONCLUSION

After considering the structure and theory of both the relevant individual guidelines used to calculate the sentence in this case and the guidelines as a whole, *Saucedo*, 226 F.3d at 782, the Court concluded extraordinary acceptance of responsibility, such as what Stewart demonstrated in this case by foregoing a meritorious motion to suppress that may have precluded her prosecution altogether, was a permissible basis for departure. In particular, the Court concluded Stewart's actions justified an eight-level downward departure on the basis of extraordinary acceptance of responsibility.

An Order has entered.

of a substance containing cocaine base carries a mandatory minimum sentence of 5 years imprisonment, the current state of the law in the Sixth Circuit is that the mandatory minimum does not apply unless the drug amounts were charged in the indictment and proved beyond a reasonable doubt at trial. *United States v. Strayhorn*, 250 F.3d 462, 469–70 (6th Cir.2001). As a result, because Stewart pleaded guilty to an information that did not charge specific drug amounts, the statutory mandatory minimum does not apply in this case, and Stewart was only subject to the default 20 year maximum found at 21 U.S.C. § 841(b)(1)(C).

9. The Government filed a motion for a downward departure based upon substantial assistance pursuant to USSG § 5K1.1. Stewart's assistance included the provision of information regarding Ellison and Akridge, testimony before the Grand Jury and testimony at Akridge's trial. Based upon this assistance the Court departed downward an additional before the Grand Jury and testimony at Akridge's trial. Based upon this assistance the Court departed downward an additional five levels to offense level 12, criminal history category II, which resulted in a guideline range of 12 to 18 months. The Court sentenced Stewart to the bottom of that range, i.e., twelve months incarceration..