

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-2003

# USA v. Davenport

Precedential or Non-Precedential: Non-Precedential

Docket 01-1524

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Davenport" (2003). *2003 Decisions*. Paper 868.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/868

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 01-1524

UNITED STATES OF AMERICA

v

DENNIS DAVENPORT,
Appellant

On Appeal from the United States District Court for the District of Delaware
D.C. Criminal No. 00-cr-00033
District Judge Sue L. Robinson

Argued
September 17, 2002
Before: Becker, Chief Judge Scirica & McKee, Circuit Judges
(Filed January 22, 2003)

S. Timothy A. Crawford, Jr., Esq. (Argued)
Crawford & Associates
1616 Walnut Street
Suite 700
Philadelphia, PA 19103

        Attorney for Appellant

Keith M. Rosen, Esq. (Argued)
Office of United States Attorney
1201 Market Street
P.O. Box 2046, Suite 1100
Wilimington, DE 19899-2046

        Attorney for Appellee

OPINION OF THE COURT

McKee, Circuit Judge:

Dennis Davenport appeals the district court's denial of his suppression motion and the ensuing sentence that was imposed following his unconditional guilty plea to possession of powder cocaine and cocaine base with the intent to distribute in violation of 24 U.S.C. § § 841(a)(1) and 841(b)(1)(A). Davenport argues that the district court erred in not suppressing the physical evidence seized from his residence because no exigent circumstances justified the warrantless entry and search. He also claims that the district court erred in concluding that the controlled substance involved was crack cocaine, and in imposing a dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1)   For the reasons that follow, we will affirm.

## I. **Background**

On January 6, 2000, a cooperating informant acting at the direction of the Drug Enforcement Agency, placed a series of monitored telephone calls to Davenport during which he negotiated the purchase of approximately 5.5 ounces of crack cocaine for $5,000. During those calls, Davenport stated that he would "cook" the cocaine himself from powder he had at his residence at 1006 Anchorage Street, Wilmington Delaware.  Thereafter, the informant went to that address, and received approximately 153.2 grams of crack cocaine from Davenport for $5,000.  Subsequent chemical analysis determined that the substance Davenport sold on that occasion was a mixture of cocaine base and benzocaine weighing 153.2 grams.

From February 15, 2000, through February 17, 2000, Davenport had a series of monitored telephone conversations with the informant as well as another meeting at

2

Davenport's residence. During those conversations, the informant negotiated the purchase of approximately nine ounces of "crack" from Davenport at a price of $1,050 per ounce.

On March 3, 2000, DEA agents again monitored a telephone conversation between the informant and Davenport. During that conversation, Davenport stated that he had the nine ounces of crack and would deliver it to the informant later that same day at Davenport's Anchorage Street residence. A few hours later, at approximately 5:00 pm, DEA agents arrested Davenport several blocks away from his home. Shortly thereafter, the agents entered Davenport's residence without a warrant. Once inside, they apparently waited for confirmation that a search warrant had been obtained from a magistrate judge. After agents confirmed that a search warrant had been obtained, they began searching Davenport's residence. While searching the kitchen they found approximately 240.8 grams of a substance they believed to be crack cocaine, approximately 125 grams of powder cocaine, a digital scale, a pot containing cocaine residue, a case for a handgun, and a magazine for a .9mm handgun. That magazine fit a .9mm handgun they subsequently found in Davenport's second floor bedroom.

Based upon this investigation and search, a federal grand jury returned a three count indictment charging Davenport with distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count I); possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count II); and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1))C) (Count III).

Following indictment, Davenport moved to suppress the physical evidence that had

3

been seized during the search of his residence. He argued that since police entered his home without a warrant and without exigent circumstances, all of the "fruits" of that search were tainted and had to be suppressed. He insisted that the warrant that was subsequently obtained was irrelevant because police had nearly an hour to search and/or plant evidence before the warrant was ever obtained.

The district court denied Davenport's suppression motion. The court reasoned that, even *assuming arguendo* that the initial warrantless entry was illegal, the evidence was nevertheless admissible under the "independent source" doctrine pursuant to the holding in *Segura v. United States*, 468 U.S. 796 (1984). However, before making that ruling, the court gave Davenport an opportunity to present any evidence he had that police either seized evidence before obtaining the warrant, or that they "planted" some or all of the evidence they seized. Davenport responded to the court's invitation for such a hearing by sending a letter advising that a hearing on that issue was not necessary because he had no proof to support those claims. Accordingly, the court declined to accept Davenport's unsupported allegation. Rather, the court concluded that Davenport's involvement with the informant furnished probable cause, and that the search warrant was not based upon anything police learned from their initial intrusion. Accordingly, the court concluded that the evidence was obtained independently of the initial warrantless entry, and denied the motion to suppress.

Thereafter, Davenport appeared before the district court and pled guilty to Count II of the indictment pursuant to a written plea agreement that contained a stipulation as to the

weight and identity of controlled substances attributable to Davenport for purposes of sentencing.   In that Plea Memorandum, Davenport and the government agreed that 394 grams of "crack" cocaine base were attributable to him along with 125 grams of powder cocaine.

Moreover, during the Rule 11 colloquy, the district court specifically stated the weight of the drugs involved in Count II, and told Davenport that the substance involved was "crack" cocaine base.  Davenport  indicated that he understood the charge against him, and admitted that he was pleading guilty to knowingly possessing with intent to distribute the substance attributed to him.  At no point during the colloquy did Davenport object to characterizing the substance as "crack" cocaine, or suggest that the "cocaine base" stipulated to in the plea agreement was anything other than "crack."

Following the court's acceptance of the plea, but prior to sentencing, Davenport did request a hearing on the identity of the controlled substance attributed to him.  The court responded by noting that Davenport had already stipulated to the identity of the substance and informing Davenport that it would not conduct a hearing on that issue so long as the government had disclosed its lab report to him.  However, the court did give Davenport the option of proceeding with the sentencing under the terms of the plea agreement, or withdrawing his guilty plea and proceeding to trial.  Following a brief recess, Davenport informed the court that he had decided to proceed to sentencing.

At sentencing, Davenport objected to enhancing the sentence for possession of a firearm in connection with the drug distribution under the guidelines noting that he had not

5

agreed to any such enhancement in the plea agreement. However, after hearing testimony and argument on that issue, the court imposed a two level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). The court also granted a three-point downward adjustment based upon Davenport's acceptance of responsibility. Davenport was then sentenced to 168 months of imprisonment followed by a term of supervised release. This appeal followed.[1]

## II. Discussion

As noted above, Davenport makes three arguments on appeal. We shall take each argument in turn.

## A. The Suppression Ruling

Davenport argues that "the warrantless entry into [his] residence . . . was, *ab initio*, unreasonable and its unreasonable, 'bad in law' character should not change because it was followed by a search pursuant to a lawful warrant." Appellant's Br. at 23. However, Davenport did not preserve this argument by entering a *conditional* guilty plea. Rather, his plea was an unconditional one pursuant to a plea agreement that did not include any suggestion that Davenport was preserving the right to challenge the suppression ruling. Accordingly, his challenge to the suppression ruling has been waived. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Moreover, Davenport could not prevail on this argument even if he had not waived it.

Even now, Davenport does not suggest that the DEA agents actually planted

---

[1] We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.

6

evidence, or that they used evidence from the initial warrantless entry to obtain the search warrant. Rather, he merely argues that the warrantless entry tainted anything that was seized thereafter because the search was void "*ab initio*." However, since he concedes that there is no evidence that police either planted evidence or exploited the initial entry by relying upon it to obtain the warrant, it is clear that the district court's application of the independent source doctrine was proper. *See United States v. Huff*, 873 F.2d 709, 712 (3d Cir. 1989).

### B. The District Court Properly Attributed "Crack" to Davenport.

Davenport argues that the district court erred in concluding that the cocaine base attributed to him was "crack" cocaine under the Sentencing Guidelines. "Cocaine base" as used in the guidelines "means 'crack' . . . the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually in a lumpy rock like form." U.S.S.G. § 2D1.1 ©), Note (D). In order for the crack cocaine sentencing enhancement to apply under the guidelines, the government must establish by a preponderance of the evidence that the cocaine base attributable to the defendant is "crack" under U.S.S.G. § 2D1.1. *United States v. Holman*, 168 F.3d 655 (3d Cir. 1999).

Davenport's challenge to this enhancement is based upon our decision in *United States v. James*, 78 F.3d 851, 855 (3d Cir. 1996), wherein we noted that Congress did not intend to apply the § 2D1.1 enhancement to forms of cocaine base other than crack cocaine. In *James*, we stated that although a sentencing court can consider a defendant's admissions during a guilty plea colloquy in determining if the crack enhancement applies, a

7

"casual reference" by the government to crack during a plea colloquy does not satisfy the government's burden. *See also, United States v. Dent*, 149 F.3d 180 (3d Cir. 1997); and *United States v. Roman*, 121 F.3d 136 (3d Cir. 1997).

Davenport therefore argues that the references to crack on this record are not sufficient to support the sentencing enhancement under the Sentencing Guidelines. The laboratory report establishes that sodium bicarbonate was not present in the cocaine base attributed to Davenport under Count II. Davenport reminds us that the report describes the 153.2 gram seizure as "cocaine base plus benzocaine," and the report only refers to the 240.8 gram seizure as "cocaine base." He then claims that since the DEA laboratory report does not conclude that the substance seized from him was crack cocaine, the government's proof was not sufficient to apply the enhancement for crack cocaine. *See* Appellant's Brief at 28. Davenport's argument is therefore bottomed on the chemical analysis which concluded only that the analyzed substance was "cocaine base" and that a sample included benzocaine. *Id*., at 29. Davenport insists "One Hundred and Fifty Three point Two (153.2) grams of controlled substance were determined to be cocaine base plus benzocaine, which is not 'crack' cocaine." *Id*.

However, we recently clarified that the sentencing enhancement for what is commonly referred to as "crack" does not turn on the presence of any particular cutting agent. Thus, although crack is usually produced by "cutting" cocaine powder with sodium bicarbonate, the absence of any particular additive does not establish that a drug is something other than "crack." *United States v*. Waters, 313 F.3d 151, 156-7 (3d. Cir.

8

2002).

Moreover, the plea agreement that Davenport freely entered into with the government stipulates that 394 grams of "crack" cocaine base, and 125 grams of powder cocaine would be attributed to him for purposes of sentencing. *See* App. Exh. B at ¶ 3. Paragraph 2 of that agreement further provides that Davenport stipulated that he "possessed with the intent to distribute more than 50 grams of the 'crack' form of cocaine base." *Id.,* at ¶ 2. As noted earlier, Davenport's plea was entered unconditionally and he has therefore waived any issue as to the identity of the controlled substance that he stipulated to. It is axiomatic that "[a] knowing and voluntary plea constitutes an admission of all material facts alleged in the indictment, even where those facts are not essential elements of the offense charged." *United States v. Faulks,* 143 F.3d 133, 138-39 (3d Cir.1998).

Ironically, we have tried to minimize the very problem exemplified by Davenport's challenge to the enhancement by encouraging prosecutors to incorporate stipulations as to the identity of the drugs into plea agreements. In *United States v. Roman*, 121 F.3d 136, 141 n.4 (3d Cir. 1997), we stated:

> [W]here a written plea agreement is entered questions of notice and proof at sentencing could be greatly minimized by simply including language in the plea agreement by which a defendant acknowledges the identity of the drugs involved.

That is precisely what occurred here, yet Davenport still attempts to argue the district court erred in concluding that the enhancement for crack cocaine applied. We reject Davenport's eleventh hour attempt to rescind the stipulation he freely entered into in his plea

9

agreement.[2]

Accordingly, we conclude that the district court did not err in concluding that the record supported application of the "crack enhancement" under the Sentencing Guidelines.[3]

### C. The Firearms Enhancement Was Properly Applied.

Davenport argues that the district court erred in applying a two level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). He claims that the evidence was not sufficient to establish the necessary nexus between the firearm and his drug activity. We review the court's conclusion that Davenport possessed weapons in furtherance of his drug activity under a clearly erroneous standard. We will reverse that factual determination only if we are left with a definite and firm conviction that a mistake has been made. *United States v. Demes*, 941 F.2d 220 (3d Cir.1991).

The relevant provision of the guidelines provides for a two level increase if a firearm is possessed in connection with the offense of conviction. U.S.S.G. § 2D1.1(b)(1).

---

[2] Moreover, while negotiating the sale of these drugs with the DEA informant, Davenport consistently referred to the drugs as "crack," and he also referred to himself as a "cooker." This is clearly a reference to the process of converting cocaine powder into crack cocaine. *See Waters*, 313 F.3d at 156.

[3] We also reject Davenport's attempt to distinguish between drugs actually seized from him, and drugs attributable as "relevant conduct" for the same reasons. *See* Appellant's Br. at 32. ("[T]he government intermingled the amount of controlled substances that should have been attributed for purposes of the underlying offense with amounts of controlled substance that might have been considered as 'relevant conduct' for purposes of enhancement."). The distinction Davenport attempts to draw is illusory. The enhancement applies to drugs charged in a count of conviction as well as to drugs attributed as relevant conduct. U.S.S.G. § 1B1.3, *United States v. Pollard*, 986 F.2d 44, 47 (3d Cir.1993).

Application Note 3 to § 2D1.1.(b)(1) states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was not connected with the offense." *See* U.S.S.G. §§ 2D1.1(b)(1), 2D1.1, comment. (n.3), 18 U.S.C.A. Thus, the government is not required to prove that a given weapon was actually used in relation to the charged offense. *See*, e.g., *United States v. Price,* 13 F.3d 711, 732-33 (3d Cir.1994).

Here, the undisputed facts of record establish that Davenport was using his home to sell cocaine. Davenport sold the informant drugs there on one occasion, and the informant arranged another purchase from that location that was to take place on the day Davenport was arrested.

While searching Davenport's home police fond a .9mm handgun at the very time Davenport had arranged to sell more drugs to the informant. As noted above, that gun was found in a bedroom on different floor than the drugs and drug paraphernalia. However, during the sentencing hearing, Detective Henry Cannon, a fifteen year veteran police officer with experience in both the Wilmington Police drug unit and the DEA Task Force, testified that drug dealers typically use firearms to protect their product, cash and personal well being.

Moreover, even though the gun was not found in close proximity to the drugs or drug paraphernalia, a loaded magazine that fit the gun was nearby as was other evidence that the firearm was used in connection with the drug business. Accordingly, we hold that the district court's factual findings were not clearly erroneous and that the court did not err in imposing the two-level firearm enhancement.

11

IV.

For the foregoing reasons we will affirm the sentence imposed by the district court.

TO THE CLERK:

Please file the foregoing opinion.

/s/ Theodore A. McKee
Circuit Judge