UNITED STATES of America,
Plaintiff,

v.

Tuan NGUYEN, Defendant.

No. CR01–4069–MWB.

United States District Court,
N.D. Iowa,
Western Division.

May 17, 2002.

William L. Blinkard, Randy S. Hisey, Hisey Law Office, South Sioux City, NE, Patrick Thomas Parry, Forker & Parry, Sioux City, IA, Jeffrey A. Neary, Federal Public Defender, Sioux City, IA, for defendant.

Kevin C. Fletcher, U.S. Attorney's Office, Sioux City, IA, for U.S.

## MEMORANDUM OPINION AND ORDER REGARDING DOWNWARD DEPARTURE

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND .................................... 1010

II. FINDINGS OF FACT ................................................. 1013

III. DISCUSSION ...................................................... 1014
 A. The Acceptance–Of–Responsibility Guideline .......................... 1014
 B. Discretion To Depart ............................................... 1017
 C. The Downward Departure Motion .................................... 1018
 1. Has the Commission forbidden departures based on this factor? .... 1019

2. *Has the Commission discouraged departures based on this factor?* . . . . 1020
3. *Has the Commission encouraged departures based on this factor?* . . . . 1021
4. *What features of this case potentially take it outside the "heart-*
 *land"?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1023
 a. *The typical acceptance-of-responsibility landscape* . . . . . . . . . . . . . . 1023
 b. *Is this case "exceptional" and outside the "heartland"?* . . . . . . . . . 1025
 D. *The Extent Of The Departure* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1031

**IV. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1033

This court consistently instructs juries in criminal cases to "remember also that the question before you can never be whether the government wins or loses the case. The government, as well as society, always wins, regardless of whether your verdict is not guilty or guilty, when justice is done." The sentencing issue in this case puts this lofty assertion to task. In this case, a defendant pleaded guilty to possession with intent to distribute fifty or more ounces of crack cocaine and entered an *Alford* plea on the corresponding conspiracy charge. After his plea, he testified on behalf of his co-defendant and sister, who faced the same charges but exercised her Sixth Amendment right to a jury trial. She was acquitted. At sentencing, this court *sua sponte* raised the issue of a potential downward departure on the ground that a witness who, risking his own penal interests, truthfully testifies on behalf of a co-defendant and takes total responsibility for the criminal conduct charged may be deserving of a downward departure pursuant to Guideline 5K2.0 for extraordinary acceptance of responsibility when the jury credits such testimony and acquits the co-defendant. The issue in this case, therefore, is whether such extraordinary acceptance of responsibility is outside the "heartland" of the Federal Sentencing Guidelines's acceptance of responsibility provision.

## I. INTRODUCTION AND BACKGROUND

This matter is before the court on the court's *sua sponte* notice of a potential downward departure based on the defendant's extraordinary acceptance of responsibility. In this case, the defendant, Tuan Nguyen ("Mr.Nguyen"), testified on behalf of his co-defendant and sister, My Linh Nguyen ("Ms.Nguyen"). In his testimony at Ms. Nguyen's trial, Mr. Nguyen accepted total responsibility for the charges against Ms. Nguyen, exonerating her fully. In all likelihood, the jury believed Mr. Nguyen's testimony, because it returned a verdict of "not guilty" against Ms. Nguyen on all counts.

On August 21, 2002, a federal grand jury returned a two count indictment against Mr. Nguyen and Ms. Nguyen. Count 1 of the indictment charged that Mr. Nguyen and Ms. Nguyen knowingly and unlawfully conspired with each other and with other persons, known and unknown to the Grand Jury, to distribute and possess with the intent to distribute approximately 49 grams or more of a mixture or substance containing a detectable amount of cocaine base (also known as "crack cocaine") in violation of 21 U.S.C. §§ 841 and 846 (hereinafter referred to as the "conspiracy count"). Count 2 of the indictment charged that Mr. Nguyen and Ms. Nguyen knowingly and intentionally possessed with the intent to distribute 49 grams or more of crack cocaine in violation of 21 U.S.C. § 841 [1] (hereinafter referred to as the "possession count").

1. The indictment also charged an "aiding and abetting" alternative under count 2.

The charges against Mr. Nguyen and Ms. Nguyen stemmed from a July 30, 2001 traffic stop in Sioux City, Iowa. On that day, a Sioux City police officer was conducting surveillance of a home, acting on information supplied by a confidential informant regarding the distribution and "cooking" of cocaine at that residence. The officer observed Mr. Nguyen park his car in front of the residence. The officer then observed Mr. Nguyen enter the front door of the residence under surveillance and then exit through that same door five minutes later. The officer immediately initiated a traffic stop after he observed Mr. Nguyen make a U-turn. Mr. Nguyen, Ms. Nguyen, Hoa Nong, and Binh Nguyen[2] were all inside the car.

According to Mr. Nguyen, no one else in the car knew (1) that Mr. Nguyen had purchased crack cocaine that day; and (2) that he had gone to the Sioux City residence to do so. The group of friends had traveled from Lincoln, Nebraska to Sioux City, Iowa in order to return a key to Mr. Nguyen and Ms. Nguyen's sister. Mr. Nguyen testified both at his plea hearing and at Ms. Nguyen's trial that he stopped at the Sioux City house to buy a personal use amount of crack cocaine, but because he was offered a "good deal" and because he was intimidated, he bought a significantly larger amount—specifically, Mr. Nguyen purchased 45.47 grams of crack cocaine for approximately $1,000. When the police officer initiated the traffic stop after Mr. Nguyen's crack cocaine purchase, Mr. Nguyen states that he reached toward the back of the car where Ms. Nguyen was seated and placed the crack inside her purse without her knowledge, because he knew his driver's license was revoked.

To be sure, during the traffic stop, dispatch notified the officer that Mr. Nguyen indeed did not have a valid driver's license,

and he placed Mr. Nguyen under arrest. The officer then asked the passengers to exit the car, and, using a K–9, he searched the vehicle. Ms. Nguyen had left her purse in the car, and the K–9 gave a strong indication on it. The officer then searched the purse and found Mr. Nguyen's crack cocaine. At that time, the officer placed all occupants of the vehicle under arrest, and in August of 2002, the federal grand jury returned a two count indictment against both Mr. Nguyen and Ms. Nguyen. The other occupants of the vehicle were not charged.

■ On October 29, 2001, Magistrate Judge Paul A. Zoss presided over Mr. Nguyen's first attempted change-of-plea hearing. At this first hearing, the parties intended to introduce and enter into a written plea agreement. The terms of Mr. Nguyen's October 29, 2001 written plea agreement provided that, if Mr. Nguyen pleaded guilty to the conspiracy count, the government would move to dismiss the possession count. (Doc. No. 33, Exh. 1). However, in order to accept a guilty plea, the presiding judge must be satisfied that there exists a factual predicate to support a defendant's plea of guilty. FED. R. CRIM. P. 11(f); *e.g.*, CHARLES ALAN WRIGHT, ET AL., 1A FED. PRAC. & PROC. CRIM.3d 11 (Supp. 2001) ("[T]he court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."); *cf.* FED. R. CRIM. P. 11(c)(1) (requiring that the court "inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered"); *White v. United States*, 858 F.2d 416, 423 (8th Cir.1988) (citation omitted) (defining factual basis as " 'sufficient evidence at the time of the plea upon which a court may reasonably determine

---

**2.** Binh Nguyen is not related to either Mr. Nguyen or Ms. Nguyen.

that the defendant likely committed the offense.' ").

In this case, the plea agreement provided the following:

> On July 30, 2001, in the Northern District of Iowa and elsewhere, defendant Tuan Nguyen, Mylinh [sic] Nguyen, Hoa Nong, Binh Nguyen, Larry Williams, and others, reached an agreement or came to an understanding to distribute and possess with the intent to distribute 45.47 grams or more of a mixture or substance containing a detectable amount of cocaine base (also known as crack cocaine).

(Doc. No. 33, Exh. 1, at ¶ 21–A). Even though Mr. Nguyen initialed this portion of the plea agreement, at his change-of-plea hearing, he refused to stipulate to the fact that he conspired with Ms. Nguyen, Hoa Nong, or Binh Nguyen, because Mr. Nguyen insisted that they had no knowledge of his drug involvement. Further, he would not stipulate that he "handed the drugs" to Ms. Nguyen, but rather asserted that he "stuck" the drugs in her purse without her knowledge.

In essence, Mr. Nguyen disavowed part of the written plea agreement by refusing to stipulate to these facts. Consequently, the court would not accept Mr. Nguyen's guilty plea without the government's consent to Mr. Nguyen's modification of the agreement, which the government, understandably, was not willing to give. Magistrate Judge Zoss, therefore, adjourned the plea hearing without having accepted Mr. Nguyen's guilty plea to the conspiracy count. At the close of the hearing, the parties agreed that they would consult and attempt to reach an agreement as to an adequate factual basis.

The parties, however, were unable to reach such an agreement, and on November 13, 2001, Mr. Nguyen again appeared before Magistrate Judge Zoss. At this second attempted change-of-plea hearing, Mr. Nguyen intended to plead "straight up" to the counts charged in the indictment—that is, to plead guilty to both the conspiracy count and the possession count charged in the indictment without a written plea agreement. At this plea hearing, Magistrate Judge Zoss was concerned about the factual basis supporting the conspiracy count because Mr. Nguyen continued to adamantly deny that any of the other occupants of his car during the July 30, 2001 traffic stop knew anything about the drugs. Mr. Nguyen was, however, willing to stipulate to all the facts pertaining to the possession count. Nevertheless, Magistrate Judge Zoss, in an abundance of caution, decided not to go forward with the hearing, instead deferring the plea proceeding to the undersigned.

 On December 7, 2001, this court accepted Mr. Nguyen's *Alford* plea to the conspiracy count of the indictment and straight up guilty plea to the possession count.[3] Shortly thereafter on January 3, 2002, Ms. Nguyen proceeded to trial in this court. Mr. Nguyen testified on behalf of Ms. Nguyen on January 4, 2002. In his testimony, Mr. Nguyen reiterated his firm assertion that none of the occupants of the car had any knowledge of his drug purchase or of his drug usage, for that matter. The court found Mr. Nguyen's testimony to be credible, and, in all likelihood, the jury concurred, returning a "not guilty" verdict on both counts of the indictment against Ms. Nguyen on January 4, 2002.

On March 5, 2002, Mr. Nguyen appeared for sentencing. The United States Proba-

---

**3.** With an *Alford* plea, the defendant pleads guilty and consents to the imposition of a sentence while still proclaiming his innocence of the charged offense. *See North Carolina v.* *Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The court is obliged to find "strong evidence of actual guilt" before accepting such a plea. *Id.*

tion Officer assigned to draft Mr. Nguyen's Presentence Investigation Report ("PSIR") scored Mr. Nguyen's total offense level at 27. This scoring represented the base offense level of 30 minus 3 points for acceptance of responsibility, pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.") §§ 3E1.1(a) and 3E1.1(b) (2001). Furthermore, Mr. Nguyen is a criminal history category II. Based on a total offense level of 27 and criminal history category II, Mr. Nguyen's guideline range for imprisonment is 78 to 97 months. Neither the government nor Mr. Nguyen's counsel reported any objections to the PSIR. The court, however, raised the issue of a possible downward departure pursuant to United States Sentencing Guidelines section 5K2.0 for exceptional acceptance of responsibility and declined to go forward with the sentencing until the parties had the opportunity to brief the issue, and Mr. Nguyen's sentencing was rescheduled for May 15, 2002. Mr. Nguyen was represented by privately retained counsel, who filed a "brief" in support of the motion for downward departure.[4] Foreshadowing potential problems with the defendant's brief, the court invited, and the Federal Public Defender accepted, the court's offer to file an *amicus curiae* brief. The *amicus curiae* brief was extraordinarily thorough and well-written. The United States Attorney's Office resisted the downward departure and filed both a brief in resistance and a brief in reply to the Federal Public Defender's brief.

## II. FINDINGS OF FACT

As indicated above, Mr. Nguyen testified on behalf of Ms. Nguyen at her jury trial. He testified that, while in Sioux City with the other occupants of his vehicle, he went to the Sioux City residence under surveillance with the intent of purchasing a personal use quantity of crack cocaine. No one in the car, including Ms. Nguyen, knew that he used crack cocaine, nor that his purpose in going to the Sioux City residence was to purchase drugs, having instead told them that he was stopping to ask for directions. Once inside the house, Mr. Nguyen testified that he was offered a good deal on a significantly larger quantity of crack cocaine. Mr. Nguyen had a substantial amount of cash on his person because his mother had given Mr. Nguyen money in order to pay rent and other family expenses while she was away in Vietnam. He used over $1,000 of this money to purchase 45.47 grams of crack cocaine.

When he returned to the vehicle, he made a U-turn, which provided the officer performing surveillance of the residence cause to initiate a traffic stop. Mr. Nguyen testified that, because he new his driver's license was revoked and that he would be arrested, he transferred the two small bags of crack cocaine from his pants pocket to Ms. Nguyen's purse, which was sitting behind him in the vehicle. He asserted that she had no knowledge that he had put the drugs in her purse and that he only did so because he was nervous.

The government argues that this testimony was perjurious because it conflicts with the written plea agreement that Mr. Nguyen signed before his first attempted

---

4. Even though the court framed the specific issue presented in this case and directed the defendant's attorney to file a brief in support of the downward departure, the ten-page brief mentions "extraordinary acceptance of responsibility" only twice—in the opening and closing paragraphs. In between these two naked references to extraordinary acceptance of responsibility, the brief merely rehashes the *Koon* decision; there is no case citation, argument, or analysis as to why extraordinary acceptance of responsibility as a basis of departure should apply in this case.

change-of-plea hearing. The court, however, finds by a preponderance of the evidence that Mr. Nguyen's testimony was truthful. This finding is based on the court's evaluation of Mr. Nguyen's testimony during trial and, furthermore, on the fact that the jury more than likely also found Mr. Nguyen's testimony to be truthful. The record clearly demonstrates that Mr. Nguyen did not have a full understanding of the impact of his signed plea agreement, and he did not sign the agreement under oath. Moreover, once Mr. Nguyen was under oath, he refused to acknowledge that any of the occupants of the vehicle knew that there were drugs in the car. He admitted that he intended to smoke the crack cocaine he purchased on July 30, 2001 with "some friends," but he asserted that the occupants of the car were not those friends.

Moreover, the court does not find the minimal and non-material inconsistencies between Mr. Nguyen's testimony and the testimony of other witnesses, such as whether a key was in fact returned to Mr. Nguyen's sister, to be anything more than innocent misrecollections. The government contends that the inconsistencies between Mr. Nguyen's written plea agreement and his testimony prove that Mr. Nguyen committed perjury at Ms. Nguyen's trial. This contention is flawed for two reasons. First, Mr. Nguyen initialed the paragraphs of the written plea agreement, but he was not under oath. Second, the record is clear that Mr. Nguyen did not have an adequate opportunity to review the plea agreement before signing it—his counsel presented it to him moments before the attempted change-of-plea hearing. This fact is bolstered by the signature date of the plea agreement, October 29, 2001, which was the same day as the hearing. Given the time constraints placed on Mr. Nguyen at the time he signed the agreement, coupled with his limited English proficiency, the court is far

from persuaded that the written plea agreement is evidence of perjury. Conversely, the court finds by a preponderance of the evidence that Mr. Nguyen's testimony was, in fact, truthful. *See, e.g., United States v. Simms*, 285 F.3d 1098, 1101 (8th Cir.2002) (" '[t]he district court must review the evidence and make [an] independent finding, by a preponderance of the evidence, of perjury in order to impose a sentence enhancement for obstruction of justice.' ") (internal quotations omitted) (quoting *United States v. Taylor*, 207 F.3d 452, 455 (8th Cir.2000) (in turn quoting *United States v. Thomas*, 93 F.3d 479, 489 (8th Cir.1996)); *United States v. Hoelzer*, 183 F.3d 880, 882 (8th Cir.1999) (preponderance of the evidence required at sentencing; "The district court must weigh the evidence and base its sentencing decision on the preponderance of the evidence.") (citing *United States v. Anderson*, 68 F.3d 1050, 1054 (8th Cir.1995)); *United States v. Lindsey*, 30 F.3d 68, 70 (7th Cir.1994) (requiring district court to resolve factual disputes at sentencing by a preponderance of the evidence) (citing *United States v. Haddad*, 10 F.3d 1252, 1263 (7th Cir.1993)); *United States v. Concepcion*, 983 F.2d 369, 387 (2d Cir.1992) (holding disputed facts relevant to sentencing, even under guidelines, need be established only by preponderance of evidence) (citations omitted); *United States v. Villasenor*, 977 F.2d 331, 336 (7th Cir.1992) (holding factual matters pertinent to application of Sentencing Guidelines must be proved to sentencing court by preponderance of evidence) (citations omitted).

### III. DISCUSSION

#### A. The Acceptance–Of–Responsibility Guideline

 The federal Sentencing Guidelines take into consideration a defendant's acceptance of responsibility, allowing for a 3 point reduction in a defendant's total of-

fense level—2 points are available under section 3E1.1(a), and 1 point is available for a timely guilty plea under section 3E1.1(b). Specifically, the acceptance-of-responsibility guideline provides:

## § 3E1.1. *ACCEPTANCE OF RESPONSIBILITY*

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1. The United States Probation Officer recommended in the PSIR to award Mr. Nguyen 2 points under section 3E1.1(a) and 1 point under section 3E1.1(b)(2).

The application notes to this guideline outline several "considerations" for determining whether a defendant has accepted responsibility for his or her criminal conduct and, consequently, whether or not a reduction of the defendant's total offense level is warranted under this provision. *See id.,* application note 1(a)-(h). Among the considerations for a reduction under section 3E1.1(a) are: truthfully admitting criminal conduct, voluntary termination of criminal conduct, voluntary payment of restitution, voluntary surrender to authorities, voluntary assistance to authorities in the recovery of fruits and instrumentalities of the offense, post-offense rehabilitation, and timeliness. *Id.* Mr. Nguyen is clearly deserving of a 2 point reduction under this provision because, while he denies Ms. Nguyen was involved, he readily admits that he purchased drugs in Sioux City from the residence under surveillance and, further, that he intended to share them with his friends.

Under section 3E1.1(b), the timeliness of the defendant's acceptance of responsibility is the paramount consideration. *Id.,* application note 6. That is so because an early change-of-plea serves the legitimate societal interest of the government's ability to avoid preparing for trial and the court's ability to effectively manage its calendar. *Id.* Here, Mr. Nguyen notified authorities of his intention to enter a guilty plea at a very early point in the process. While the first two change-of-plea hearings were unsuccessful, the record clearly demonstrates that Mr. Nguyen wanted to plead guilty, and a lack of communication between Mr. Nguyen and his counsel, as well as Mr. Nguyen's limited proficiency of the English language, caused the ensuing problems with the factual stipulation of the written plea agreement. Mr. Nguyen's disavowal of the plea agreement had nothing to do with a reversal of his intention to accept responsibility for his crime and to enter a plea of guilty. Accordingly, a 1 point reduction under section 3E1.1(b) is also warranted.

The question in this case, however, is not whether Mr. Nguyen deserves the 3 point reduction under section 3E1.1—indeed, all parties agree that this portion of the PSIR was scored correctly.[5] The

---

5. On March 21, 2002, the government filed a Request To Open The Final Presentence In-

vestigation Report (PSIR) To Add Additional Information. (Doc. No. 81). The government stated that, after Mr. Nguyen's original sentencing date of March 5, 2001, it learned that Mr. Nguyen provoked an attack on March 1, 2002 on a fellow inmate while in custody awaiting sentencing. The government requested (1) to add this information to the PSIR and (2) that the court consider the effect of Mr. Nguyen's purported conduct on his acceptance of responsibility. The defendant did not resist this request by the government, and the court granted the request on April 26, 2002. (Doc. No. 89).

The acceptance-of-responsibility guideline is intended to reward a defendant who demonstrates responsibility for his or her offense. *See* U.S.S.G. § 3E1.1. Mr. Nguyen has done this. Mr. Nguyen's conduct while in custody is, if reported accurately, reprehensible, but it has no bearing on his acceptance of responsibility for the offenses charged in the indictment, which relate only to his possession and intent to distribute crack cocaine. Instead, Mr. Nguyen could be subject to new criminal charges for the assault while in custody, pursuant to, for example, Title 18, U.S.C. §§ 7, 113(d). A panel of the Sixth Circuit held that the base offense deduction under section 3E1.1 for acceptance of responsibility contemplates acceptance of responsibility for the specific offense, not for illegal conduct in general. *United States v. Morrison*, 983 F.2d 730, 735 (6th Cir.1993).

The panel enumerated classes of conduct that may be considered sufficiently related to the underlying offense to consider in the context of post-plea conduct as a basis for the denial of the acceptance-of-responsibility reduction. *See id.* The panel rejected the government's contention that "one who has truly accepted responsibility for a crime against society will not commit further crimes, period." *Id.* at 733–34. Instead, the court analyzed pre-sentence criminal conduct on a case-by-case basis and held that the conduct will not deprive a defendant of the acceptance-of-responsibility reduction unless it is of the same type as the underlying offense, is the motivating force behind the offense, is related to actions toward relevant government witnesses, or involves an otherwise strong link to the underlying offense. *Id.* at 735.

The Eighth Circuit, however, declined to follow the Sixth Circuit's reasoning and held: Section 3E1.1 [does not] contain[ ] any restriction against considering unrelated criminal conduct in denying an acceptance of responsibility reduction. Rather, the guideline permits the district court to consider whether defendant has demonstrated "voluntary termination or withdrawal from criminal conduct or associations," U.S.S.G. § 3E1.1, Application Note 1(b), and defendant's conduct "may ... outweigh" the fact that defendant pleaded guilty to the underlying offense.

*United States v. Byrd*, 76 F.3d 194, 197 (8th Cir.1996).

While concluding that the acceptance-of-responsibility guideline does not preclude a sentencing court's consideration of criminal conduct unrelated to the offense of conviction the Eighth Circuit notably and expressly did not mandate its consideration. *Id.* Instead, the court ruled that " '[t]he fact that a defendant engages in later, undesirable, behavior does not necessarily prove that he is not sorry for an earlier offense,' such conduct 'certainly could shed light on the sincerity of a defendant's claims of remorse.' " *Id.* (quoting *United States v. O'Neil*, 936 F.2d 599, 600 (1st Cir.1991)) (alteration provided by *Byrd* court). In fact, the majority of circuits hold that the Guidelines do not prohibit a sentencing court from considering, in its discretion, criminal conduct unrelated to the offense of conviction in determining whether a defendant qualifies for an adjustment for acceptance of responsibility under § 3E1.1. *See United States v. Prince*, 204 F.3d 1021, 1023–24 (10th Cir.), *cert. denied*, 529 U.S. 1121, 120 S.Ct. 1989, 146 L.Ed.2d 815 (2000); *United States v. Ceccarani*, 98 F.3d 126, 130–31 (3d Cir.1996); *United States v. McDonald*, 22 F.3d 139, 144 (7th Cir.1994); *United States v. Pace*, 17 F.3d 341, 343 (11th Cir.1994); *United States v. O'Neil*, 936 F.2d 599, 600–01 (1st Cir.1991); *United States v. Watkins*, 911 F.2d 983, 984–85 (5th Cir.1990).

The defendant has the burden to show he is entitled to an adjustment for acceptance of responsibility. *United States v. Honken*, 184 F.3d 961, 968 (8th Cir.1999) (citations omitted). Nevertheless, " '[w]hen reviewing the grant or denial of a reduction for acceptance of responsibility, [the court of appeals] affords great deference to the determination of the district court judge, who is in a unique position to evaluate whether a defendant has accepted responsibility for his offense.' " *United States v. Gonzalez–Rodriguez*, 239 F.3d 948, 954 (8th Cir.2001) (quoting *United States v. Field*, 110 F.3d 592, 594 (8th Cir.1997)). Here, Mr. Nguyen did not resist the government's request to open the PSIR, nor did he question the veracity of the attached incident

question is whether Mr. Nguyen's total acceptance of responsibility in testifying on behalf of his co-defendant was outside the heartland of the conduct contemplated in the acceptance of responsibility guideline when the jury believed his testimony and returned a "not guilty" verdict against his co-defendant.

## B. Discretion To Depart

"A district court must impose a sentence within the applicable Guideline range, if it finds the case to be a typical one." *Koon v. United States,* 518 U.S. 81, 85, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (citing 18 U.S.C. § 3553(a)). Nevertheless, "[a] sentencing judge has broad discretion to depart downward when not blocked by a specific guideline." *United States v. Gee,* 226 F.3d 885, 900 (7th Cir.2000) (citing *United States v. Stefonek,* 179 F.3d 1030, 1038 (7th Cir.1999), which in turn cites *Koon,* 518 U.S. at 98–100, 116 S.Ct. 2035). That is so because the Sentencing Guidelines do not wholly disrupt a district court's traditional exercise of discretion in determining an appropriate sentence. *See Koon,* 518 U.S. at 97, 116 S.Ct. 2035. The Guidelines state:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the

norm, the court may consider whether a departure is warranted.

U.S.S.G. ch. 1, pt. A., intro. comment 4(b).

■ Still, the Guidelines either forbid, discourage, or encourage departures based on several identified factors. *See* U.S.S.G. §§ 5H1.1–1.12, 5K2.1–2.21; *United States v. King,* 280 F.3d 886, 889 (8th Cir.2002). A sentencing court may freely depart on an encouraged ground, provided the applicable guideline does not factor in the unique circumstances of the case: "Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon,* 518 U.S. at 98, 116 S.Ct. 2035. Even though an appellate court must apply an abuse of discretion standard to a sentencing court's decision to depart, "the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Id.* Further, in order to perform its function on review, the Court of Appeals for the Eighth Circuit requires that "district judges ... carefully articulate the reasons for departure, particularly where the waters are unchartered." *United States v. Reinke,* 283 F.3d 918, 925–26 (8th Cir.2002) (citing *Koon,* 518 U.S. at 95, 116 S.Ct. 2035).

■ Here, the contemplated basis of a departure is extraordinary acceptance of responsibility, which is a factor already present in the Guidelines. *See* U.S.S.G. § 3E1.1. In *Koon v. United States,* the Supreme Court outlined the test to be applied in such cases: "If the special factor

reports. The court, therefore, assumes that the facts contained in the reports are true. Even so, assuming without deciding that the facts surrounding the alleged assault are true, the court finds by a preponderance of the evidence that Mr. Nguyen has otherwise demonstrated an affirmative recognition of his

wrongdoing, despite his unrelated criminal conduct while incarcerated. Accordingly, Mr. Nguyen's post-plea conduct in assaulting an inmate does not affect this court's finding that Mr. Nguyen's total offense level calculation should include a three-level reduction for acceptance of responsibility.

is ... an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon,* 518 U.S. at 96, 116 S.Ct. 2035. Furthermore, "[w]hether a given factor is present to a degree not adequately considered by the [Sentencing] Commission ... [is a] matter[ ] determined in large part by comparison with the facts of other Guidelines cases." *Koon,* 518 U.S. at 98, 116 S.Ct. 2035. In sum, therefore, both Supreme Court and Eighth Circuit precedent make clear that, if the district court finds that a given case is outside the heartland, *i.e.,* is atypical, of the cases considered by the Commission in formulating the Guidelines, the district court has discretion to depart downward, and the court of appeals will not disturb that discretion absent an abuse of discretion. *E.g., id.* (determinations for departures based on factual matters are subject to a unitary abuse-of-discretion standard); *Reinke,* 283 F.3d at 923 (same) (citing *United States v. McNeil,* 90 F.3d 298, 300 & n. 1 (8th Cir.1996)); *United States v. Petersen,* 276 F.3d 432, 436 (8th Cir.2002) ("Additionally, '[w]e review the district court's decision to grant a downward departure for an abuse of discretion.' ") (quoting *United States v. Hasan,* 245 F.3d 682, 684 (8th Cir.) (en banc), *cert. denied,* —— U.S. ——, 122 S.Ct. 238, 151 L.Ed.2d 172 (2001)); *United States v. Lewis,* 235 F.3d 394, 396 (8th Cir.2000) (per curiam) ("We review a district court's departure decisions under a unitary abuse-of-discretion standard.") (citing *United States v. Sample,* 213 F.3d 1029, 1032 (8th Cir. 2000)); *United States v. Ross,* 210 F.3d 916, 924–25 (8th Cir.) (same), *cert. denied,* 531 U.S. 969, 121 S.Ct. 405, 148 L.Ed.2d 313 (2000); *United States v. Oligmueller,* 198 F.3d 669, 672 (8th Cir.1999) (same);

*United States v. Weise,* 89 F.3d 502, 506 (8th Cir.1996) (same).

### C. The Downward Departure Motion

As previously stated, section 3E1.1 of the United States Sentencing Guidelines contemplates a maximum of a three point reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. In considering whether to grant a further reduction, the court should examine the following questions:

"1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?

2) Has the Commission forbidden departures based on those features?

3) If not, has the Commission encouraged departures based on those features?

4) If not, has the Commission discouraged departures based on those features?"

*Koon,* 518 U.S. at 95, 116 S.Ct. 2035 (quoting *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993)). While the court recognizes that the sequence in which this court will address the *Koon* analytical framework differs from that outlined in the *Koon* decision itself, it is this court's opinion that an analysis of whether a particular case is outside the heartland more logically should be undertaken as the last, as opposed to the first, question. That is so because if the Commission forbade departures based on the conduct at issue in this case, whether or not Mr. Nguyen's case is outside the heartland is irrelevant because the court is without authority to depart under those circumstances. *See id.* at 96, 116 S.Ct. 2035. Therefore, the court will begin its analysis of the *Koon* decision by answering whether the Commission has forbidden departures based on extraordinary acceptance of responsibility and will

end with a determination of whether Mr. Nguyen's case is outside the heartland.

### 1. Has the Commission forbidden departures based on this factor?

■ The first question posed by the *Koon* Court that this court will address is whether the Sentencing Commission has forbidden departures based on the unique features of a particular case. *See id.* at 95, 116 S.Ct. 2035 (quoting *Rivera*, 994 F.2d at 949). Here, the relevant question is whether the Sentencing Commission forbade departures based on extraordinary acceptance of responsibility. In the alternative, the court has considered whether the Sentencing Commission forbade departures based on truthful, exculpatory testimony given on behalf of a co-defendant. Scrutinized under either alternative, the court finds that the Sentencing Commission has not forbidden a departure based on these grounds.

■ The court is mindful that section 3E1.1 of the Sentencing Guidelines contemplates a reduction for acceptance of responsibility for those defendants who take responsibility for their criminal conduct and, in general, plead guilty in a timely fashion.[6] However, section 5K2.0 anticipates the presence of exceptional factors in certain cases and provides that:

> [T]he sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines

that should result in a sentence different from that described."

U.S.S.G. § 5K2.0 (Policy Statement) (quoting 18 U.S.C. § 3553(b)). The Commission was cognizant that not all sentencing decisions could be pigeon-holed into a single guideline range, and section 5K2.0 represents a " 'sensible flexibility' to insure that atypical cases are not shoe-horned into a Guidelines range that is formulated only for typical cases." *United States v. Rogers*, 972 F.2d 489, 493 (2d Cir.1992); *see also* U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b) (indicating Commission "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case").

The government contends that, because the Guidelines already anticipate a reduction for acceptance of responsibility, a further adjustment is implicitly forbidden. This is an overstatement of the law. "The mere existence of section 3E1.1(a) does not preclude the sentencing court from making an additional departure in the case where the defendant manifests an extraordinary acceptance of responsibility." *United States v. Brown*, 985 F.2d 478, 481 (9th Cir.1993); *accord United States v. Crumb*, 902 F.2d 1337, 1339 (8th Cir.1990) ("The court may also depart, 'even though the reason for departure is listed elsewhere in the guidelines . . . if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.' ") (quoting U.S.S.G. § 5K2.0) (alteration provided by Eighth Circuit); *United States v. Janusz*, 986 F.Supp. 328,

---

**6.** The court recognizes that a defendant need not plead guilty to receive a reduction under § 3E1.1. *E.g.*, U.S.S.G. § 3E1.1, application note 2 ("Conviction by trial . . . does not automatically preclude a defendant from consideration for such a reduction"); *United States v. Schultz*, 917 F.Supp. 1343, (N.D.Iowa 1996) (finding a reduction under

§ 3E1.1 appropriate even though the defendant went to trial because the defendant did not deny the factual elements of guilt, but rather disputed that the statute he was accused of violating applied to him). That is, however, the usual means and by far the most common means of receiving an acceptance-of-responsibility reduction.

330 (D.Md.1997) ("[A]cceptance of responsibility, although taken into account in applying the adjustment under USSG § 3E1.1, can provide a basis for a departure when present to such an exceptional degree that it cannot be characterized as typical.") (citing *United States v. Rogers*, 972 F.2d 489, 493 (2d Cir.1992); *United States v. Lieberman*, 971 F.2d 989, 996 (3d Cir.1992)).

While the Eighth Circuit Court of Appeals has not addressed the type of exceptional acceptance of responsibility at issue in this case, it has recognized that extraordinary acceptance of responsibility may be a proper ground for a downward departure pursuant to section 5K2.0, despite section 3E1.1's express contemplation of acceptance of responsibility. *See, e.g., United States v. Oligmueller*, 198 F.3d 669, 671 (8th Cir.1999) (recognizing district court's authority to depart downward when there are extraordinary efforts at restitution, taking the case outside the heartland) (citation omitted); *United States v. Condelee*, 961 F.2d 1351, 1353 (8th Cir.1992) (recognizing sentencing court's discretion to depart downward "in unusual circumstances such as extraordinary restitution"); *United States v. Garlich*, 951 F.2d 161, 163 (8th Cir.1991) (remanding for resentencing because district court should have considered "whether the extent and timing of Garlich's restitution [were] sufficiently unusual to warrant a downward departure"); *Crumb*, 902 F.2d at 1339–40 (affirming departure for extraordinary acceptance of responsibility when defendant voluntarily surrendered to authorities only nine days after he had been ordered to self-surrender). Thus, the court rejects the argument that section 3E1.1 precludes a departure from the Guidelines even in extraordinary cases and concludes that the Commission has not forbidden departures based on the type of extraordinary acceptance of responsibility exhibited by Mr. Nguyen.

In considering whether extraordinary acceptance of responsibility is a forbidden departure factor, as the Supreme Court explained, the court is "limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor." *Koon*, 518 U.S. at 83, 116 S.Ct. 2035. Nowhere in the Guidelines is extraordinary acceptance of responsibility listed as a proscribed factor. Thus, the Commission has not forbidden a departure on this basis.

### 2. Has the Commission discouraged departures based on this factor?

■ The court turns now to the brief inquiry of whether the Commission has discouraged departures based on extraordinary acceptance of responsibility vis a vis truthful, exculpatory testimony, given at the substantial risk of adversely affecting a defendant's own penal interests. The United States District Court for the Eastern District of Tennessee, in *United States v. Stewart*, 154 F.Supp.2d 1336, 1343 (E.D.Tenn.2001), recently performed an extensive survey of the Guidelines in order to determine whether the Commission discouraged departures on the basis of extraordinary acceptance of responsibility. The court concluded that "[e]xtraordinary acceptance of responsibility is not among the listed [discouraged or forbidden] factors, allowing a conclusion the guidelines do not explicitly discourage departure on this basis." *Id.* The listed factors are: "education and vocational skills; mental and emotional conditions; physical condition or appearance; employment record; family and community ties and responsibilities; military, civic, charitable or public service; employment-related contributions, and similar good works; and subjection to coercion or duress." *Id.* (citing U.S.S.G. §§ 5H1.1–1.6, 5H1.11, 5K2.12).

Like the *Stewart* court, this court concludes that extraordinary acceptance of responsibility is not a discouraged factor and, therefore, in conjunction with the other steps of the *Koon* analysis, that extraordinary acceptance of responsibility may be an appropriate justification for departure in exceptional circumstances.

### 3. Has the Commission encouraged departures based on this factor?

 Because the court concludes the Commission has not expressly prohibited departures based on extraordinary acceptance of responsibility, the next question this court must consider is whether the Sentencing Commission has encouraged departures based on this ground. *See Koon*, 518 U.S. at 95, 116 S.Ct. 2035. In *Stewart*, the defendant chose to forego a meritorious motion to suppress evidence that had already been found to be obtained in violation of the Fourth Amendment on motion by a co-defendant. *Id.* at 1338. Instead, the defendant entered an unconditional plea of guilty to possession with intent to distribute crack cocaine, even though pursuing the motion to suppress likely would have precluded her conviction altogether. *Id.* The district court granted an eight-level downward departure for extraordinary acceptance of responsibility on the ground the defendant's conduct was extraordinary, deserving of reward, and that a departure would encourage future defendants to emulate this type of conduct. *Id.* at 1344.

In considering whether extraordinary acceptance of responsibility is an encouraged factor, the district court analogized the type of conduct at issue in *Stewart* with section 5K2.16. *See id.* at 1342. Guideline 5K2.16 anticipates a departure for a defendant's voluntary disclosure of his or her offense prior to the authorities' discovery of the offense. U.S.S.G. § 5K2.16. Specifically, this guideline provides:

If the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a departure below the applicable guideline range for that offense may be warranted. For example, a downward departure under this section might be considered where a defendant, motivated by remorse, discloses an offense that otherwise would have remained undiscovered. This provision does not apply where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct.

*Id.* The *Stewart* court reasoned that this provision demonstrates that "even though the Commission has not explicitly enumerated extraordinary acceptance of responsibility as a favored basis for departure, it has indicated a departure may be appropriate where a defendant's assistance in the investigation and prosecution of his or her offense rises to a level beyond what one ordinarily sees in a standard case." *Stewart*, 154 F.Supp.2d at 1342.

The *Stewart* court also examined other extraordinary acceptance of responsibility cases that addressed the voluntary payment of restitution as extraordinary acceptance of responsibility. *See id.* (citing *United States v. DeMonte*, 25 F.3d 343, 346 (6th Cir.1994); *United States v. Gee*, 226 F.3d 885, 901–02 (7th Cir.2000); *United States v. Hairston*, 96 F.3d 102, 108 (4th Cir.1996); *United States v. Rogers*, 972 F.2d 489, 492 (2d Cir.1992)). In each of the cases cited, the courts' of appeals decisions recognized that the Guidelines allow for a departure for extraordinary acceptance of responsibility when the defendant has exhibited greater responsibility

for his criminal conduct than was contemplated by section 3E1.1. *Gee,* 226 F.3d at 901 (affirming departure under § 5K2.0 for exceptional acceptance of responsibility and cooperation with government after conviction); *Hairston,* 96 F.3d at 108–09 (reversing departure based on extraordinary acceptance of responsibility because restitution by defendant was not sufficiently atypical to take the case outside the Guidelines's "heartland"); *DeMonte,* 25 F.3d at 346–49 (rejecting departure based on restitution in this case while recognizing extraordinary restitution may be ground for departure but holding that defendant's extraordinary cooperation in revealing criminal conduct of which the government was wholly unaware warranted departure under § 5K2.0); *Rogers,* 972 F.2d at 493 (affirming departure where defendant emerged from a drug-induced state and, realizing his wrongdoing, turned himself over to the police and confessed). The *Hairston* court best summarized the foundation of these cases, which is likewise pertinent to the potential downward departure in Mr. Nguyen's case:

> When the Commission designates a factor as a basis for a reduction within the Guidelines, this implies that the factor is discouraged as a basis for departure from the Guidelines, or alternatively, that the factor is encouraged—at least as a basis for reduction—but has already been taken into account. In either case, ordinarily a court should not depart based on such a factor. *See United States v. Broderson,* 67 F.3d 452, 458 (2d Cir.1995) ("Ordinarily, payment of restitution is not an appropriate basis for departure under Section 5K2.0 because it is adequately taken into account by Guidelines Section 3E1.1" and is therefore a "discouraged" basis for departure).

> However, simply because the Commission designates a factor as an appropriate basis for a reduction does not mean

that the factor may never properly support a district court's departure decision. As Congress and the Commission have directed, a factor that the Guidelines address may still provide a proper ground for departure when present to such a degree that a case is removed from the "heartland" for which the guideline was designed. *See* 18 U.S.C. § 3553 (incorporated in Guideline § 5K2.0) (sentencing court may depart when court finds "an aggravating or mitigating circumstance of a kind, or *to a degree,* not adequately taken into consideration" in formulating the Guideline range) (emphasis added).

*Hairston,* 96 F.3d at 107. The *Stewart* court considered these holdings and ultimately determined that "although the guidelines do not specifically encourage consideration of extraordinary acceptance of responsibility as a factor warranting departure, the factor is, at the very least, an acceptable justification for departure in appropriate circumstances." *Stewart,* 154 F.Supp.2d at 1343.

The Eighth Circuit Court of Appeals has repeatedly recognized departures under the theory of extraordinary acceptance of responsibility when the circumstances of the case are truly exceptional and outside the heartland of section 3E1.1. *See, e.g., United States v. Newlon,* 212 F.3d 423, 424 (8th Cir.2000) (affirming downward departure for defendant's extraordinary pre-arrest participation in substance abuse treatment); *United States v. DeShon,* 183 F.3d 888, 889–91 (8th Cir.1999) (affirming extraordinary acceptance of responsibility departure when defendant made a "concrete change of life"); *United States v. Kapitzke,* 130 F.3d 820, 823–24 (8th Cir. 1997) (affirming downward departure for defendant's extraordinary acceptance of responsibility by defendant's pre-indictment participation in substance abuse treatment with "truly outstanding" re-

sults); *Crumb,* 902 F.2d at 1338–40 (extraordinary acceptance of responsibility when defendant voluntarily surrendered to authorities nine days after he had been ordered to self-surrender); *see also Garlich,* 951 F.2d at 163 (directing district court to consider extraordinary acceptance of responsibility for exceptional restitution as ground for potential departure). Thus, a departure on the ground of extraordinary acceptance of responsibility is a proper basis upon which to depart if, as *Koon* and guideline 5K2.0 direct, a defendant's acceptance of responsibility "is present to an exceptional degree or in some other way [is] different from the ordinary case where the factor is present." 518 U.S. at 96, 116 S.Ct. 2035 (citation omitted); *see also* U.S.S.G. § 5K2.0.

### 4. What features of this case potentially take it outside the "heartland"?

The last question this court must address is whether this case is outside the heartland of typical acceptance-of-responsibility cases, because the sentencing court is without authority to depart if it finds that a case is not atypical of the cases contemplated by the Sentencing Commission. *See Reinke,* 283 F.3d at 924 ("[D]epartures are only appropriate when a case falls outside the heartland") (citing U.S.S.G. ch. 1., pt. A, intro. comment 4(b); *Koon,* 518 U.S. at 92, 95, 116 S.Ct. 2035). In so answering this threshold question, the district court at the time of sentencing, in open court, must state the reasons for a particular sentence with "the specific reason for the imposition of a sentence different from that described." *See* 18 U.S.C. § 3553(c)(2); *see also United States v. Lang,* 898 F.2d 1378, 1380 (8th Cir.1990). Additionally, the district court must "explain why the guideline sentence is inadequate, identify specific factual basis for departure and explain why the resulting sentence

is reasonable." [*United States v.*] *Hendricks,* 171 F.3d [1184] at 1188 [(8th Cir.1999)] (citation omitted).

*Petersen,* 276 F.3d at 436. The court, therefore, will consider whether Mr. Nguyen's steadfast assertions and testimony that Ms. Nguyen was not involved in the offenses charged in the indictment, given at the peril of his own penal interests, render his case atypical of other acceptance-of-responsibility cases.

#### a. The typical acceptance-of-responsibility landscape

*Koon* directs district courts to compare a given case with other Guidelines cases in order to determine whether the case at bar falls outside the heartland of a Guideline provision. *Koon,* 518 U.S. at 98, 116 S.Ct. 2035. The heartland, crucial to a proper analysis, is defined as "a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. ch.1, pt. A, intro. comment. 4(b). The sentencing court, therefore, must explore the landscape of typical cases so that the court, as well as the court of appeals, is better able to get a clear picture of whether or not the facts of a case are exceptional and distinguish the case from the ordinary case in which the factor is present. Consequently, this court will begin its analysis of the potential downward departure in this case by examining "typical" acceptance-of-responsibility cases.

Section 3E1.1(a) provides for a 2 level reduction when "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). According to application note 3 of section 3E1.1, "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction ... will constitute significant evidence of acceptance of responsibility...." *Id.,* comment (n.3). Nevertheless, "a defendant who enters a guilty plea is not entitled to an adjustment

under this section as a matter of right." *Id.; see also United States v. Sierra,* 188 F.3d 798, 804 (7th Cir.1999) (" 'In the absence of evidence of sincere remorse or contrition for one's crimes, a guilty plea entered for the apparent purpose of obtaining a lighter sentence does not entitle a defendant to a reduction for acceptance of responsibility.' ") (quoting *United States v. Ewing,* 129 F.3d 430, 436 (7th Cir.1997)). Other factors, such as obstruction of justice, for example, may outweigh a defendant's recognition of his or her criminal conduct. *E.g.,id.,* comment (n.4) (an enhancement for obstruction of justice "usually indicates that the defendant has not accepted responsibility for his criminal conduct"); *United States v. Allee,* 282 F.3d 997, 1001–02 (8th Cir.2002) (finding that enhancement for post-guilty plea escape from custody precluded a reduction under section 3E1.1); *Reinke,* 283 F.3d at 925 (finding that district court's two-level increase for obstruction of justice would mean "that the case would have had to be extraordinary to justify even an acceptance of responsibility decrease in offense level, not to mention a downward departure"); *United States v. Perez,* 270 F.3d 737, 739 (8th Cir.2001) (noting that "[w]hile there may be 'extraordinary cases' in which both adjustments [obstruction of justice and acceptance-of-responsibility] might be appropriate, a case in which a reduction for acceptance of responsibility is warranted in spite of a defendant's obstructive conduct 'would be extremely rare' "), *cert. denied,* —— U.S. ——, 122 S.Ct. 1336, 152 L.Ed.2d 241 (2002) (quoting *United States v. Honken,* 184 F.3d 961, 969 (8th Cir.1999)) (internal quotations omitted by the Eighth Circuit) (internal citations omitted); *cf. United States v. Bennett,* 170 F.3d 632, 640–41 (6th Cir. 1999) (denial of acceptance of responsibility where defendant arrested on drug charges while on pretrial release); *United States v. Dawson,* 52 F.3d 631, 633–34 (7th Cir.1995) (denial of acceptance of responsibility where defendant tested positive for drug use 20 out of 30 times); *United States v. Poplawski,* 46 F.3d 42, 42–43 (8th Cir.1995) (denial of acceptance of responsibility where defendant continued use of drugs related to charged offense while free on bond).

Nevertheless, while a guilty plea does not entitle a defendant to a reduction under section 3E1.1(a), U.S.S.G. § 3E1.1, comment (n.3), the overwhelming weight of authority demonstrates that, absent obstructive conduct, a defendant's acknowledgment of guilt, in conjunction with the entrance of a timely guilty plea, is sufficient to receive the two-level reduction pursuant to section 3E1.1(a). *See, e.g., Tavares v. United States,* —— F.Supp.2d ——, ——, 2001 WL 1681861, at *2 (D.Mass. Aug.2, 2001) (noting that "timely pretrial change of plea and acceptance of responsibility resulted in a three point reduction in the base offense level") (citing U.S.S.G. § 3E1.1(a), (b) (1998)); *United States v. McCoy,* 158 F.Supp.2d 505, 505 (E.D.Pa.2001) (noting defendant's timely guilty plea warranted a 3–level reduction pursuant to section 3E1.1); *United States v. Garcia,* 165 F.Supp.2d 496, 497 (S.D.N.Y.2001) (same).

Moreover, the Court of Appeals for the Eighth Circuit has enunciated a test to determine whether a defendant is entitled to a reduction for acceptance of responsibility—the test is, in general, consistent with the entrance of a timely guilty plea in light of the Rule 11 requirement of an adequate factual basis for a guilty plea. In the Eighth Circuit, "the key issue [with respect to a defendant's entitlement to a reduction under section 3E1.1] is whether the defendant has shown 'a recognition and affirmative responsibility for the offense and sincere remorse.' " *United States v. Nguyen,* 52 F.3d 192, 194 (8th Cir.1995) (quoting *United States v. Knight,*

905 F.2d 189, 192 (8th Cir.1990)); *accord United States v. Janis*, 71 F.3d 308, 310 (8th Cir.1995) ("the defendant must exhibit a 'recognition and affirmative acceptance of [personal] responsibility.'") (quoting *United States v. Drapeau*, 943 F.2d 27, 29 (8th Cir.1991)).

While timeliness is a factor under both subsections a and b of section 3E1.1, it is the determining factor under section 3E1.1(b)(2). U.S.S.G. § 3E1.1, application note 6. That is so because a defendant who enters a plea of guilty early in the proceedings saves the government significant time in preparing for trial and, withal, enables the court to better manage its docket. *Id.* § 3E1.1(b)(2). In the overwhelming majority of cases, from this court's extensive survey of acceptance-of-responsibility cases, entry of a guilty plea prior to trial appears sufficient to merit the one-level reduction under section 3E1.1(b)(2).

Thus, the heartland of cases in which reductions are calculated pursuant to section 3E1.1 consists of a fairly predictable set of facts. They are cases in which a defendant admits the factual basis of his or her conduct that comprises the elements of a charged offense, genuinely recognizes his or her guilt, pleads guilty, and changes his or her plea sufficiently prior to trial so that the government is able to avoid preparing for trial.

### b. Is this case "exceptional" and outside the "heartland"?

 There is no doubt that Mr. Nguyen deserves a three-level reduction in his total offense level under section 3E1.1.[7]

---

7. In its brief, the government raised two issues that had not previously been raised. First, the government believed that Mr. Nguyen engaged in obstruction of justice by giving testimony that was inconsistent with his written plea agreement. In other words, the government contends that Mr. Nguyen perjured himself. Second, the government stated that a defendant who enters an *Alford* plea is not necessarily deserving of a reduction for acceptance of responsibility. Specifically, the government, in its reply brief, argued that "[a]lthough a defendant who enters an *Alford* plea is not categorically barred from receiving a departure for acceptance of responsibility, he is clearly not entitled to this reduction." [Govt's Reply Br., at 1–2]. While it is certainly true that the court may consider whether a defendant has entered an *Alford* plea as a relevant factor when deciding whether to grant the acceptance-of-responsibility reduction, *United States v. Morris*, 139 F.3d 582, 584 (8th Cir.1998), the government did not object to the PSIR calculation of Mr. Nguyen's total offense level, which included a three-level reduction under section 3E1.1.

The brief, however, was ambiguous as to whether the government was seeking an adjustment of Mr. Nguyen's total offense level on these grounds or whether it raised the arguments merely to urge the court not to grant a downward departure. Even if the government were seeking an adjustment, by failing to object to these portions of the PSIR, the government waived its right to contest these matters. *Cf. United States v. Richardson*, 238 F.3d 837, 841 (7th Cir.), *cert. denied*, 532 U.S. 1057, 121 S.Ct. 2206, 149 L.Ed.2d 1035 (2001) (defendant's words—either spoken personally or through his attorney—to the effect that he has "no objections" to a PSIR operate as a full-fledged waiver of all objections); *United States v. Ivy*, 83 F.3d 1266 (10th Cir.1996) (by failing to object to a PSIR, the government waived the "right to challenge the district court's reliance on it [absent plain error]"); *United States v. Filker*, 972 F.2d 240, 242 (8th Cir.1992) (by failing to object to sentence below Guidelines range government waived right to review of departure absent demonstration of plain error resulting in a miscarriage of justice).

The government had two distinct opportunities to make objections to the PSIR—during the prescribed time-frame prior to the sentencing hearing and at the sentencing hearing itself. Because the government failed to make a timely objection to the PSIR, any argument that may be inferred from the government's brief that Mr. Nguyen should not receive a three-level reduction under section 3E1.1 or should receive a two-level enhancement for obstruction of justice is waived. At Mr. Nguyen's second sentencing hearing, the

He pleaded guilty in a timely fashion to counts 1 and 2 of the indictment and has admitted his guilt since the very early stages of his prosecution. With respect to the timeliness of Mr. Nguyen's plea, it should be noted that, while this court accepted his plea of guilty on December 7, 2001, Mr. Nguyen desired to plead guilty as early as October 29, 2001—only two months after he was indicted. Mis-communication and language barriers prevented his change-of-plea attempts in October and November of 2001; but even so, his plea on December 7, 2001 was sufficiently timely to warrant a one-level reduction under section 3E1.1(b)(2), and the United States Probation Officer calculated his total offense level accordingly.

In Mr. Nguyen's case, he readily accepted responsibility for his criminal conduct, while simultaneously refusing under oath to implicate his co-defendant. Even viewed in isolation, Mr. Nguyen's testimony is exceptional. Very few defendants in this district testify on behalf of their co-defendants. In fact, as of May 1, 2002, I have sentenced 633 defendants to 48,391 months of imprisonment. To the best of my recollection, only two or three times has a co-defendant testified *on behalf* of a co-defendant. Conversely, drug cases comprise the vast majority of the criminal docket in this district, and in virtually every drug trial, co-defendants testify *against* each other.

Nevertheless, Mr. Nguyen's conduct is not to be viewed in isolation as the government urges this court to do. *E.g.*, *United States v. Jenkins*, 78 F.3d 1283, 1291 (8th Cir.1996) ("When considering a departure, a sentencing court should look 'to the totality of [the] individual circumstances' to determine if an unusual situation not contemplated by the Commission is created.") (quoting *United States v. Parham*, 16 F.3d 844, 848 (8th Cir.1994)); *accord United States v. Grandmaison*, 77 F.3d 555, 563 (1st Cir.1996) (emphasizing importance of district court's ability to consider "the totality of the circumstances," rather than rigid formulaic standard, when determining whether to depart based on aberrant behavior); *United States v. Gamez*, 1 F.Supp.2d 176, 184 (E.D.N.Y.1998) ("A court must look to the totality of the circumstances surrounding criminal action to discern whether it justifies a departure based upon its aberrational nature.") (citing *United States v. Takai*, 941 F.2d 738, 743 (9th Cir.1991)). Under the totality of circumstances in this case, Mr. Nguyen's conduct and acceptance of criminal responsibility is unique. It is not Mr. Nguyen's acknowledgment of his own culpability that makes this case unique. Indeed, in order to receive a reduction under section 3E1.1, a defendant must recognize his or her guilt. *See* U.S.S.G. § 3E1.1. This case, however, involves Mr. Nguyen's acceptance of responsibility *plus* his credible testimony that served justice by exculpating an innocent defendant given at the risk of not only harming his posture at his sentencing, but also at the risk of facing additional criminal charges. And while the government argues that "[m]ost sib-

---

government conceded as much. Instead, the Assistant United States Attorney stated for the first time that it raised these arguments only on the question of whether the court should depart, and not to change the defendant's total offense level calculation. This response by the government clarified the otherwise ambiguous brief points on these issues.

Furthermore, the implications from the government's ambiguous arguments in this regard appear to be in retaliation for the court's raising the potential downward departure *sua sponte*. There is no other plausible explanation for the timing of the government raising these collateral issues, nor did the government attempt to offer another explanation at the second sentencing hearing when questioned by the court. Such arguments smack of bad faith.

lings would welcome such an opportunity" to testify on behalf of a sibling on trial, [Gov't Br., at 18], a jury's credence of such testimony is extraordinarily unusual, especially when viewed through the skeptical lens that inevitably accompanies a sibling's exculpatory testimony. Furthermore, the government's assertion that "[m]ost siblings would welcome" the opportunity to exculpate a brother or sister belies the reality in this district where cooperating defendants routinely cooperate *against* close relatives in the hope of receiving a reduction in their sentences for substantial assistance.

What is truly unique and exceptional about this case is the extent to which Mr. Nguyen's testimony served the ends of justice. Mr. Nguyen's testimony exculpated his co-defendant and was given at a cost of risking additional criminal charges, a potential obstruction of justice adjustment at his sentencing if the jury did not believe him, and foregoing the benefits accompanying his written plea agreement, including an agreed upon three-level reduction for acceptance of responsibility, an agreement on the part of both parties not to seek any other adjustments upward or downward, and dismissal of the possession count. While the government believes that the "defendant gave perjurous testimony for the purpose of exculpating his sister for a crime he knew she committed," [Gov't Br., at 10], neither the jury nor this court concurs. The government's view that Mr. Nguyen's sentence should not be subject to any reductions for extraordinary acceptance of responsibility is, at least in part, blurred by its unyielding belief that Ms. Nguyen was guilty of the crimes of which the jury acquitted her. Because of this viewpoint, the government asserts that Mr. Nguyen's testimony obstructed, rather than served, the ends of justice. However, the jury found Ms. Nguyen not guilty, and the court declines the government's implicit invitation to presume her guilt during the sentencing stage of Mr. Nguyen's case.

Furthermore, the government assumes too much, stating that "the government's rejection of defendant's story forecloses any departure for assistance to the criminal justice system." [Gov't Br., at 18]. Under section 5K2.0, which is the guideline provision at issue in this case, it is within the *court's* discretion whether or not to depart from the Guidelines, not the government's. U.S.S.G. § 5K2.0. Thus, whether or not the government rejects or accepts Mr. Nguyen's testimony is irrelevant in light of this court's factual finding that Mr. Nguyen testified truthfully.

The government also contends that Mr. Nguyen's case is not outside the heartland of the acceptance-of-responsibility guideline because section 3E1.1(b) contemplates the type of conduct involved here. Specifically, the government asserts that the original version of section 3E1.1 provided only for a two-level reduction for acceptance of responsibility and that the 1991 amendment to this guideline[8] anticipated the type of acceptance of responsibility Mr. Nguyen exhibited. The amendment, section 3E1.1(b), provides for a potential third level of reduction to reward a defendant who accepts responsibility for his or her offenses and "assist[s] authorities in the investigation or prosecution of his [or her] own misconduct." U.S.S.G. § 3E1.1(b). Such assistance is rendered by taking one of more of the following steps: "(1) timely providing complete information to the government concerning [a defendant's] own involvement in the offense; or (2) timely notifying authorities of [a defendant's] intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting

---

**8.** The amendment became effective November 1, 1992.

the court to allocate its resources efficiently." Id. § 3E1.1(b)(1)-(2).

In this case, the government argues that, under section 3E1.1(b)(2), a defendant need only render assistance to "authorities," not to a prosecutor, in order to qualify for the section 3E1.1(b)(2) reduction. Here, the government contends that "[t]he only potentially unique aspect to defendant's alleged assistance in the investigation and prosecution of his own offense is that he told his story under oath at his sister's trial." [Gov't Br., at 17]. The government's argument, however, demonstrates its misunderstanding of the issue in this case. The unique feature of Mr. Nguyen's case is his assistance to the cause of justice through his truthful testimony, which served no personal end.

■ Instead of bowing to the pressures of the prosecutor, yielded through the written plea agreement, Mr. Nguyen took the stand at his co-defendant's trial and told the truth. His testimony, in all likelihood, substantially contributed to an innocent defendant's acquittal. It is this exceptional service to the cause of justice, performed voluntarily [9] and at the cost of his own penal interests, that Mr. Nguyen's extraordinary acceptance of responsibility for the criminal conduct surrounding the July 30, 2001 traffic stop takes this case outside the heartland of the acceptance-of-responsibility guideline. Mr. Nguyen demonstrated an acceptance of responsibility far beyond what this court sees in the usual case, even in cases in which the defendant is entitled to the full three-level reduction under section 3E1.1.

9. The government also contends that, by entering a plea of guilty, Mr. Nguyen had waived his Fifth Amendment right and "had no more right to refuse to testify than did any other person with knowledge of relevant facts." [Govt's Br., at 18]. However, the court seriously doubts the validity of this assertion because the Eighth Circuit has recognized a defendant's right to invoke his or her Fifth Amendment privilege against self-incrimination at a co-defendant's trial despite the defendant's guilty plea. United States v. Velasquez, 141 F.3d 1280, 1282 (8th Cir. 1998); accord Mitchell v. United States, 526 U.S. 314, 325, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) ("We reject the position that either petitioner's guilty plea or her statements at the plea colloquy functioned as a waiver of her right to remain silent at sentencing.") In Velasquez, Juan Velasquez pleaded guilty to possession with the intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 841(a)(1). Velasquez, 141 F.3d at 1281. Juan Velasquez's co-defendant and half-brother, Fidel Velasquez, proceeded to trial and was convicted. Id. Prior to trial, however, Fidel Velasquez sought a court order to compel Juan Velasquez's testimony. Id. Juan Velasquez asserted his Fifth Amendment privilege against self-incrimination, and the district court denied Fidel Velasquez's motion. Id. After his conviction, Fidel Velasquez ap-

pealed, arguing the district court erred in refusing to compel Juan Velasquez to testify at Fidel Velasquez's trial over Juan Velasquez's assertion of his Fifth Amendment right. Id.

The Eighth Circuit affirmed the district court's ruling, holding that a "plea of guilty to a federal charge ... d[oes] not waive [a defendant's] Fifth Amendment privilege as it relates to other charges." Id. at 1282 (citing United States v. Mejia–Uribe, 75 F.3d 395, 399 (8th Cir.), cert. denied, 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 97 (1996)). The court reasoned that the defendant continued to enjoy his Fifth Amendment privilege despite his plea of guilty because his testimony could have subjected him to state charges for the same acts, as well as new federal criminal charges, and potentially could have adversely affected his position at sentencing. Id. at 1282 & n. 3.

Thus, Mr. Nguyen's voluntary decision to testify at Ms. Nguyen's trial subjected him to possible additional charges, a possible obstruction of justice adjustment at sentencing, and the possibility of additional drug quantity amounts affecting his total offense level calculation. He, therefore, enjoyed the Fifth Amendment privilege against self-incrimination even after his guilty plea and indeed had a right to refuse to testify. See id.

In addition, the government argues that this case is not outside the heartland because the Commission considered the type of conduct exhibited by Mr. Nguyen and limited any reductions for such conduct under section 5K1.1. Section 5K1.1 provides the following:

### § 5K1.1. *Substantial Assistance to Authorities*

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1.

The government asserts that in establishing this provision, the Sentencing Commission adequately considered any aspects of Mr. Nguyen's case that might arguably be unique compared to other section 3E1.1 cases; namely, his assistance to the cause of justice. The government contends that the Commission limited the application of section 5K1.1 to instances in which the defendant assisted in the prosecution of culpable defendants and that by refusing to extend this guideline to those defendants who exculpate, rather than inculpate, others, the Commission made a deliberate decision to not reward other types of assistance, such as that rendered by Mr. Nguyen. Therefore, the government argues that because Mr. Nguyen's case is within the heartland of cases contemplated by the Commission in promulgating section 5K1.1, the court is without authority to depart on the ground that Mr. Nguyen's testimony advanced the cause of justice.

The government cites *United States v. Haversat*, 22 F.3d 790 (8th Cir.1994), in support of the proposition that Mr. Nguyen's conduct constitutes "substantial assistance to the administration of justice," which is within the ambit of the section 5K1.1 guideline and, consequently, cannot form the basis of a downward departure under section 5K2.0. In *Haversat*, the district court departed downward from the defendant's guideline range on the basis the defendant pleaded nolo contendere to the price fixing charge against him and on the ground that the defendant assisted in settling a related civil antitrust suit, thereby assisting the court in administering justice and saving court resources. *Id.* at 794. The Eighth Circuit reversed the district court's departure, holding that "a defendant's early nolo plea and a defendant's assistance in settling a related civil suit do not provide a basis for downward departure under section 5K2.0." *Id.* at 795.

The court of appeals based its ruling on two distinct grounds. First, the court reasoned that the defendant's assistance in settling a civil suit was akin to providing " 'voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense,' which is an appropriate consideration for determining acceptance of responsibility." *Id.* (quoting U.S.S.G. § 3E.1., application note 1(e)). For that reason, the court held that a downward

departure under guideline 5K2.0 was not authorized by the Sentencing Guidelines, absent exceptional circumstances. *Id.* Second, and pertinent to Mr. Nguyen's case, the court opined that "substantial assistance to the administration of justice is also counted, to some degree, under U.S.S.G. § 5K1.1, which allows a sentencing court to depart downward '[u]pon motion of the government stating that the defendant has provided substantial assistance' to the prosecution.' " *Id.* (quoting U.S.S.G. § 5K1.1).

The *Haversat* decision, however, is inapposite to the issue in this case for several reasons. First, in *Haversat*, while the Eighth Circuit characterized the defendant's assistance in settling a civil case as "substantial assistance to the *administration* of justice," it is clear the court was referencing the impact of the defendant's actions on court resources. *See id.* (emphasis added). The *Haversat* court rejected assistance to the courts as a grounds for a departure from a defendant's guideline range. *Id.* In so doing, the *Haversat* court rejected a Second Circuit case, which held that substantial assistance to the courts presents a proper basis for a downward departure. *Id.* at 794 (citing *United States v. Garcia,* 926 F.2d 125, 127–28 (2d Cir.1991)). In *Garcia,* the district court departed downward when a defendant involved in a multi-defendant case pleaded guilty and expressed his willingness to testify against his co-defendants. *Garcia,* 926 F.2d at 126. As a result of the information provided by this defendant and his willingness to testify against his co-defendants, the other defendants pleaded guilty. *Id.*

The district court reasoned:

I don't think the guidelines speak to that kind of cooperation which relates to the defendant who breaks the log jam in a multi-defendant case that's pending in the seriously overclogged dockets of the District Courts of the United States.

Judge Daly thereafter described the cooperation in a multi-defendant case as constituted by a relatively early plea of guilty and a willingness to testify, or at least the public perception of the willingness to testify and what that does with other defendants or can do and, in this case, did in my judgment do.

*Id.* at 126–27.

The Second Circuit affirmed a downward departure under section 5K2.0, reasoning that "Garcia not only helped the government develop the case, his cooperation after the indictment resulted in the disposition of the charges against the remaining two defendants. Garcia's 'activities facilitating the proper administration of justice in the District Courts,' are not encompassed by § 5K1.1." *Id.* at 127. In Mr. Nguyen's case, the court is not considering the effect of Mr. Nguyen's conduct on court resources, but rather raised the potential departure on the ground of Mr. Nguyen's extraordinary assistance to the cause of justice—not its administration. Mr. Nguyen's testimony clearly did not unclog this court's docket because his testimony did not influence his co-defendant to plead guilty. Thus, the type of "assistance to the administration of justice" rejected by the *Haversat* court is not the type of assistance at issue in Mr. Nguyen's case.

This fact is further demonstrated by the *Haversat* court's analogy to the *Garlich* decision, which likewise rejected a departure under section 5K2.0 on the basis that the defendant's early guilty plea conserved judicial resources. *United States v. Garlich,* 951 F.2d 161, 163–64 (8th Cir.1991). The *Haversat* court stated:

The reasoning of *Garlich* applies with equal force in this case. Haversat's argument that his early nolo plea should be a basis for a downward departure because it assisted the court is virtually

identical to Garlich's argument that [a] downward departure was appropriate because his early guilty plea saved judicial resources.... Similarly, Haversat's assistance in settling a related civil lawsuit is also more properly treated as a factor to be considered in relation to acceptance of responsibility.

*Haversat*, 22 F.3d at 795. Thus, the very reasoning employed in *Haversat* illustrates that the particular type of assistance the court rejected as a basis for a downward departure involved tangible judicial resources that are, by its plain language, contemplated by section 5K1.1. *Compare* U.S.S.G. § 5K1.1 (downward departure for substantial assistance), *with Haversat*, 22 F.3d at 795 ("substantial assistance to the administration of justice is also counted, to some degree under U.S.S.G. § 5K1.1").

Furthermore, *Haversat* is a pre-*Koon* decision, and its vitality in the wake of *Koon* is, at best, questionable. And in addition, the Eighth Circuit has recognized that a reduction for acceptance of responsibility serves a different purpose than a downward departure for substantial assistance. *United States v. Aslakson*, 982 F.2d 283, 284 (8th Cir.1992) (per curiam). " 'Substantial assistance [within the meaning of section 5K1.1] is directed to the investigation and prosecution of criminal activities by persons other than the defendant, while acceptance of responsibility is directed to the defendant's affirmative recognition of responsibility for his own conduct.' " *Id.* (quoting U.S.S.G. § 5K1.1, application note 2). In this case, there is no doubt that Mr. Nguyen's conduct in accepting total and complete responsibility for the charged offenses and exculpating his co-defendant do not fall within the ambit of section 5K1.1 and were not the type of conduct at which the Commission directed this guideline.

Here, Mr. Nguyen accepted far more responsibility for his criminal conduct than is the norm under section 3E1.1. The heartland of acceptance of responsibility cases is comprised of a defendant's timely guilty plea. In this case, Mr. Nguyen forewent the security of a written plea agreement because he could not, under oath, stipulate to the facts the government sought to include in the agreement—namely, the identity of his alleged co-conspirators. After pleading guilty without a written plea agreement, Mr. Nguyen voluntarily chose to testify at his co-defendant's trial. Under oath, Mr. Nguyen exonerated Ms. Nguyen and subjected himself to further criminal charges and possibly adversely affected his position at sentencing.[10] In the opinion of this court, Mr. Nguyen's conduct in truthfully testifying on behalf of a co-defendant, which lead at least in part to that co-defendant's acquittal, takes his case outside the heartland of acceptance-of-responsibility cases. His testimony substantially and positively impacted justice because, in all likelihood, the jury credited his testimony and returned a not guilty verdict against his innocent co-defendant, Ms. Nguyen. Mr. Nguyen's extraordinary acceptance of responsibility deserves to be recognized and rewarded. Accordingly, the court will depart downward in this case.

### D. The Extent Of The Departure

Having explored the *Koon* analysis and having concluded (1) that extraordinary acceptance of responsibility in exculpating

---

**10.** In Mr. Nguyen's case, the court assumes without deciding that Mr. Nguyen's testimony could have adversely affected his position at sentencing. However, resolution of this issue is not necessary to this court's determination that Mr. Nguyen's case is outside the heartland of section 3E1.1 cases because of the other circumstances of the case, which are identified throughout the body of this ruling.

a co-defendant is an appropriate theory upon which to base a departure; and (2) that Mr. Nguyen's conduct is sufficiently exceptional to make it atypical of the ordinary heartland of acceptance-of-responsibility cases contemplated by the Commission, the court's final task is to determine the extent of the departure. *See, e.g., United States v. Kingston,* 249 F.3d 740, 742–43 (8th Cir.2001) (noting a " 'departure is appropriate only in extraordinary cases where there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines' " and that the court of appeals affords "great deference" to the sentencing court's determination of the extent of the departure) (citing *United States v. Sample,* 213 F.3d 1029, 1032 (8th Cir.2000); *United States v. Otto,* 64 F.3d 367, 371 (8th Cir.1995)) (internal quotations omitted); *United States v. Lewis,* 235 F.3d 394, 396 (8th Cir.2000) (per curiam) (affirming extent of district court's upward departure under reasonableness standard and deferring to district court "(1) on the issue of whether a given factor is present to a degree not adequately considered by the Sentencing Commission; (2) on the question of whether the circumstances of a case warrant departure …; and (3) on the reasonableness of the extent of the district court's departure") (citing *Sample,* 213 F.3d at 1032); *United States v. Sharma,* 85 F.3d 363, 365 (8th Cir.1996) (pre-*Koon* decision outlining three-step analysis applicable to departure as: "1) whether … the circumstances the district court relied on for departure are sufficiently unusual in a kind or degree to warrant departure; 2) whether … the circumstances justifying departure actually exist; and 3) whether the sentence is reasonable.")

■ The Eighth Circuit Court of Appeals reviews the reasonableness of the extent of a departure from the Guidelines for an abuse of discretion. *United States v. Johnson,* 56 F.3d 947, 958 (8th Cir.1995) (citing *United States v. Perkins,* 929 F.2d 436, 438 (8th Cir.1991)), affording the district court's determination "great deference." *Kingston,* 249 F.3d at 743. The rationale underlying this deferential standard of review is that "[t]he district court's decision on this matter is quintessentially a judgment call and we respect the district court's superior 'feel' for the case." *Johnson,* 56 F.3d at 958 (quoting *United States v. Snover,* 900 F.2d 1207, 1211 (8th Cir. 1990)) (citing *United States v. Sweet,* 985 F.2d 443, 445 & n. 2 (8th Cir.1993)); *accord Kingston,* 249 F.3d at 743 (citing *Otto,* 64 F.3d at 371).

The Sixth Circuit has held that a departure must be "reasonable in terms of the amount and the extent of the departure in light of the reasons for the departure. In other words, … the reasons [must] justify the magnitude of the departure." *United States v. Tocco,* 200 F.3d 401, 432 (6th Cir.2000) (citing *United States v. Crouse,* 145 F.3d 786, 789 (6th Cir.1998)) (internal citations omitted). In *United States v. O'Kane,* 155 F.3d 969, 976 (8th Cir.1998), the Eighth Circuit Court of Appeals, in dicta, questioned the district court's four-level departure for extraordinary acceptance of responsibility because the court did not explain on the record "why it took a departure of four levels (amounting to a two-thirds reduction in possible punishment) as opposed to, say, only a one level departure, in order to adequately compensate O'Kane for the extraordinary acceptance of responsibility the court thought was present." *Id.*

■ From this statement, this court opines that, when the Guidelines already consider a given factor but when that factor is present to an exceptional degree, warranting a departure under section 5K2.0, the extent of the court's departure from the Guidelines must be reasonably

correlated with the reduction already contemplated by the Commission in promulgating the particular guideline provision. In this case, the Commission considered acceptance of responsibility in section 3E1.1 and provided for up to a three-level reduction. As stated in section III.C.1.b of this opinion, the ordinary acceptance-of-responsibility case consists of no more than a timely guilty plea. Here, Mr. Nguyen's conduct in risking the protection of a written plea agreement and further criminal charges in order to testify truthfully, accepting total responsibility for the crimes for which a co-defendant stood trial, is worthy of at least an equal reduction as the typical defendant is given for pleading guilty. Mr. Nguyen accepted far more responsibility for his conduct than this court normally sees and, in the process, contributed significantly to the cause of justice. Given these features of Mr. Nguyen's case, the court finds that a three-level reduction in Mr. Nguyen's total offense level is justified under the circumstances of this case.

This court's conclusion that a three-level reduction in Mr. Nguyen's offense level is warranted is bolstered by a comparison with substantial assistance reductions given pursuant to guideline 5K1.1. While Mr. Nguyen's conduct certainly does not meet the technical requirements of a 5K1.1 motion because he did not assist in the prosecution of another defendant, *see* U.S.S.G. § 5K1.1, guideline 5K1.1 bears an analytical resemblance to the issue presented in this case and implicates questions of fundamental fairness. "[A]nalogy to the guidelines is . . . a useful and appropriate tool for determining what offense level a defendant's conduct most closely approximates." *United States v. Kikumura,* 918 F.2d 1084, 1113 (3d Cir.1990). Nevertheless, "[s]entencing courts need not adhere to a mathematical approach in determining the extent of the departure, but rather need only 'link the degree of departure to

the structure of the Guidelines and justify the extent of the departure taken.'" *United States v. Jones,* 278 F.3d 711, 718 (7th Cir.2002) (quoting *United States v. Simmons,* 215 F.3d 737, 743 (7th Cir. 2000)).

Here, linking the structure of the Guidelines to the departure, a three-level reduction is reasonable, in part, because of the similarity between a departure pursuant to section 5K1.1 for substantial assistance and Mr. Nguyen's conduct in this case—both significantly and equally serve the interests of justice. A departure under the unique circumstances of Mr. Nguyen's case will not open the floodgates of downward departures for exculpatory testimony given on behalf of a co-defendant because the type of conduct at issue in this case happens so rarely, especially in comparison to the number of cooperating defendants who receive 5K1.1 motions. When the government makes a 5K1.1 motion, this court typically grants a reduction of 30–60% off the low end of the defendant's guideline range. A three-level reduction in Mr. Nguyen's total offense level reduces his sentence by 27%, assuming a 57 month term of imprisonment were available and not trumped by the statutory minimum sentence. Justice was undeniably served in Ms. Nguyen's case when a jury acquitted her of the offenses charged against her. Given that Mr. Nguyen's testimony imperiled his penal interests and contributed to an innocent defendant's acquittal, his conduct is at least as deserving of a departure similar to that given on a typical 5K1.1 motion when a defendant assists in the prosecution of culpable defendants. Accordingly, a three-level reduction in this case is reasonable and adequately reflects the structure of the Sentencing Guidelines.

## IV. CONCLUSION

The court finds that extraordinary acceptance of responsibility is a permissible

basis of departure under the United States Sentencing Guidelines and that, in light of the exceptional facts of this case, a downward departure pursuant to guideline 5K2.0 is warranted. Mr. Nguyen's case is outside the heartland of the typical acceptance-of-responsibility case because he accepted total and complete responsibility for the crimes charged in the indictment and risked his own penal interests in order to testify truthfully and to exonerate a codefendant. The jury credited Mr. Nguyen's testimony, and an innocent defendant was acquitted. Absent Mr. Nguyen's testimony and his refusal to, under oath, stipulate to the identities of his co-conspirators that were named in the indictment, the conviction of an innocent defendant was likely.

The Guidelines are more than a means to achieving uniformity in sentencing—they are a law enforcement tool. Namely, section 5K1.1 bestows upon the United States Attorney's Office the power to offer defendants a reduction in their sentences in exchange for substantial assistance to the prosecution of other criminals. A downward departure under section 5K1.1 is a "reward or quid pro quo for providing valuable cooperation." *United States v. Wolf,* 270 F.3d 1188, 1192 n. 3 (8th Cir. 2001). Under most circumstances, section 5K1.1 is an effective means of ensuring that each member of a conspiracy, for example, answers for his or her criminal conduct. However, in rare circumstances such as are presented in this case, the defendant is unable to truthfully provide the assistance sought by the government. When Mr. Nguyen refused to stipulate to Ms. Nguyen's participation in the charged conspiracy, he did so in spite of the inevitable loss of any hope of receiving a section 5K1.1 motion. He accepted full responsibility for his criminal conduct and risked additional criminal charges and a possible obstruction of justice calculation so that he could testify truthfully and exonerate a wrongly accused defendant. In short, Mr. Nguyen's strength in risking his own interests and his contribution to the ultimate goal of justice warrant recognition.

The PSIR scored Mr. Nguyen's total offense level, after a reduction for acceptance of responsibility under section 3E1.1, at a level 27. In conjunction with a criminal history category II, Mr. Nguyen's sentence was initially within the Guidelines range of 78 to 97 months, with a statutory minimum of 60 months, pursuant to 21 U.S.C. §§ 841 and 846. The court, however, finds that a further reduction is warranted under the unique circumstances of this case and has departed downward three levels pursuant to section 5K2.0 of the United States Sentencing Guidelines. Thus, Mr. Nguyen's adjusted total offense level is 24, yielding a guideline imprisonment range of 57 to 71 months. Because the statutory minimum applies, however, the effective guideline range is 60 to 71 months.

**IT IS SO ORDERED.**